

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Lee Brady
Commissioner
Department of Banking
Austin, Texas

Dear Mr. Brady:

Opinion No. O-3465

Re: Construction of Article 512 of
the Revised Civil Statutes with
respect to the words "banking
house" and "fixtures".

We beg to acknowledge receipt of your letter of
inquiry as follows:

"Your attention is directed to the provisions of Article
512 of the Revised Statutes of Texas, 1925, which reads
as follows:

"'No State bank or bank and trust company shall
invest more than fifty per cent of its capital
stock and permanent surplus in its banking
house, nor more than fifteen per cent of its
capital stock and permanent surplus in the
furniture and fixtures to be used in its said
banking house, unless said corporation shall
have first applied to the State Banking Board
and received written permission to make a
larger investment than is allowed hereunder,
which written permission shall be entered
upon the minutes of a regular meeting of
said banking corporation.'

"A banking corporation recently incorporated under the
laws of this State, having a capital stock of $35,000.00,
surplus of $10,000.00 and debentures outstanding in the
sum of $15,000.00, has constructed a bank building and
has installed in that building 'built-in Friendly type
marble fixtures with four cages, built on brick walls'

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable Lee Brady - page 2

costing $2,295.00. It has also installed a vault door
at a cost of $600.00, Venitian blinds at a cost of
$71.20 and a Neon sign at the entrance of the customers'
vault at a cost of $20.00. These items have been added
to the cost of the building, making a total of $13,139.12,
at which figure the building is carried on the books of
the bank. This bank has invested in movable fixtures a
sum equal to 15% of its capital and surplus.

"The bank has taken the position that the built-in marble
fixtures above mentioned having been constructed on brick
walls, constitute a part of the building and, therefore,
are not fixtures within the purview of Article 512 above
mentioned. The same position is taken with reference to
the vault door, Venitian blinds and Neon sign.

"Please advise whether or not these marble fixtures, this
vault door, blinds and sign are 'fixtures' within the pur-
view of Article 512, or whether they constitute a part
of the banking house within the meaning of that Statute."

Your inquiry is incapable of a definite or final
answer one way or the other, for the reasons hereinafter
stated.

The term "fixtures", in legal contemplation,
ordinarily means those articles or things that are per-
manently attached to the land, with the intention that
they should become a part thereof. Obviously, the word
is not used in this sense in the bank statute, but rather
it is used in the sense of personal property commonly
known as "trade fixtures". These trade fixtures may,
and in most instances do, consist of articles capable
of permanent attachment to the land, but on the other
hand, they are likewise equally capable of use as per-
sonal property, with no intention whatever of perman-
ently attaching them to the realty.

The matter is not determined by any rule of
physical or structural attachment of the fixture to the
land, such physical attachment, and the extent and nature
thereof, are merely circumstances tending to evidence the
real intention of the person or persons owning the build-
ing and the fixtures. Each and every article mentioned
by you may, present the proper intention, become and be a

part of the building, and therefore a part of the land. On the other hand, each and every article mentioned by you, present such an intention, may become and be trade fixtures -- personal property -- and not a part of the building in which they are located, and to which they may even be to some extent physically attached.

As early as Hutchins v. Masterson, 46 Tex. 551 (1877) our Supreme Court said:

"It is said, the weight of the modern authorities establish the doctrine that the true criterion for determining whether a chattel has become an immovable fixture, consists in the united application of the following tests:

"1st. Has there been a real or constructive annexation of the article in question to the realty?

"2d. Was there a fitness or adaptation of such article to the uses or purposes of the realty with which it is connected?

"3d. Whether or not it was the intention of the party making the annexation that the chattel should become a permanent accession to the freehold? - this intention being inferable from the nature of the article, the relation and situation of the parties interested, the policy of the law in respect thereto, the mode of annexation, and purpose or use for which the annexation is made.

"And of these three tests, preeminence is to be given to the question of intention to make the article a permanent accession to the freehold, while the others are chiefly of value as evidence as to this intention. (Ewell on Fixtures, 21, 22.)"

In Moody v. Aiken, 50 Tex. 65 (1878) a banker's safe was involved, and while the safe itself was not secured to the building, it was, however, enclosed within the walls of a vault in such way as it could not be removed without

Honorable Lee Brady - page 4

destroying the walls in part, and was thus effectually
made fast in the building. In that case the Supreme
Court said:

"More recent decisions have, however,
to some extent, brought order out of this
confusion, and have established for our
guidance certain rules founded on reason
and custom. These make the true test of
a removable fixture at least to depend not
so much on the mere fact of 'a ligature, a
bolt, or a screw' as upon constructive an-
nexation, the intention of the party in mak-
ing the same, and the relation which the
article bears to the uses of the freehold."

The court further adds:

"Under the authority of the case of
Hutchins vs. Masterson and others cited
above, the intention of the parties be-
comes a controlling element in the deter-
mination of the question whether a par-
ticular annexation has or has not assumed
the character of a fixture", and affirmed the judgment
of the trial court, holding the safe to be personalty and
not a part of the realty.

In the case of Inge v. First State Bank of Denton,
57 S. W. (2) 217, involving a time-lock door to a vault
used by a bank, Justice Lattimore said:

"The obligation of the appellee by
its lease was to return the building
'as it now is.' We are thus relegated
to the rules in Hutchins v. Masterson,
46 Tex. 554, 26 Am. Rep. 286. The rules
therein set out, when read in the light
of Moody vs. Aiken, 50 Tex. 65, make it
plain that our rule of public policy and
in favor of trade and to encourage indus-
try encourages the tenant to install
trade fixtures which, if erected for a
mere temporary purpose and without any
intention on the part of the tenant that
same become a part of the realty, and if

Honorable Lee Brady - page 5

not so attached as to become a part thereof, may be removed. It is the intention which is the important factor; hence the evidence of the bank officials that appellee did not intend for the articles to become a part of the realty. This testimony was admissible, but it was not exclusive; 'the intention being inferable from the nature of the article, the situation of the parties interested, the mode of annexation, the circumstances which require the installation and the use to be made thereof."

The court then held:

"The time lock door and the bank cages and windows are trade fixtures, and as such the tenant is entitled to remove them. It is of no importance that the closet door (held to be realty) matches in appearance the cages, but it is of importance that the time lock door is especially a bank vault door. The one door is not a trade fixture, the other is."

See also: Dallas Joint Stock Land Bank v. Lancaster, 100 S. W. (2) 1029; Clark v. Clark, 107 S. W. (2) 421.

These cases are cited and quoted for the purpose of emphasizing the fact that the matter of classification of the fixture is largely if not altogether one of intention. By "intention" we mean, of course, the intention of the party putting in or installing the fixture.

From what we have said, it follows that if the bank in question in constructing its building placed or installed its marble fixtures, cages, vault door, Venetian blinds and Neon sign, intending at the time that these things should be a permanent part of the building, they would be such in law. This presents a question of fact which you are authorized to determine from the evidence before you. In this connection, we will say that such fact question should be determined from all the facts and circumstances surrounding the situation, and not alone by the mere present statement of the Board members who construct-

ed the building. The fact that the bank has carried on its books the banking house at a value to include the cost of these fixtures, is a cogent circumstance supporting the present contention of the bank with reference to the character of the fixtures, or in other words, with respect to the intention of the bank at the time the building was constructed and the fixtures installed.

Under date of January 8, 1934, the writer of this opinion, then counsel to the Banking Commissioner, advised your Department with respect to the status of a bank vault door as a real fixture or trade fixture, a copy of which opinion is before us, and a copy of which you may have if the original is not available to you at this time.

Trusting that what we have said will be a sufficient answer to your inquiry, we are

APPROVED MAY 8, 1941

FIRST ASSISTANT
ATTORNEY GENERAL

Very truly yours

ATTORNEY GENERAL OF TEXAS

By

Ocie Speer
Assistant

OS-MR


APPROVED
OPINION
COMMITTEE
BY _____
CHAIRMAN