W. J. HUTCHINS v. MASTERSON & STREET, ASSIGNEES, &c.

1. CHARGE.—A charge given upon a hypothesis not warranted by the testimony, is error,

2. FIXTURES.—The criterion for determining whether a chattel has become an immovable fixture, consists in the united application of the following tests:

> 1. Has there been a real or constructive annexation of the article in question, to the realty?
>
> 2. Was there a fitness or adaptation of such article to the use or purposes of the realty with which it is connected?
>
> 3. Was it the intention of the party making the annexation, that the chattel should become a permanent accession to the freehold?—this intention being inferable from the nature of the article, the relation and situation of the parties interested, the policy of the law in respect thereto, the mode of annexation and purpose or use for which the annexation is made.

3. SAME.—Of these three tests, prominence is given to the question of intention to make the article a permanent accession to the freehold, while the others are chiefly of value as evidence regarding this intention.

4. SAME—SUGAR-MILL.—A sugar-mill erected by the owner of a plantation, and sold as part of it, as to the rights of vendees, is a fixture, and part of the realty.

5. SAME—STATUTE OF FRAUDS.—A parol sale of a fixture by the owner of the land, would be void under the statute of frauds.

APPEAL from Brazoria.   Tried below before the Hon. A. S. Lathrop, special judge.

January 8, 1872, D. G. Mills brought suit against W. J. Hutchins, for the recovery of a sugar-mill, alleged to be of the value of $3,000, or its value, damages, &c.   Mills going into bankruptcy, his assignees, Masterson & Street, were made parties.   Plaintiff claimed title to the mill, by purchase of one Brown, who bought from McNeel, who bought of Asa Watt Thompson, on the — day of September, 1867.

The defendant pleaded the general denial; and that the mill was a fixture on a plantation which had been conveyed by Mrs. Nancy Thompson to her sons, A. Watt Thompson and Wells Thompson, in which A. Watt Thompson had conveyed his interest, November 26, 1866, to Wells Thompson, and that Wells Thompson had sold the mill to defendant.

The testimony showed a parol sale, by A. Watt Thompson, while in possession of the land, to McNeel, in November, 1866; that in August, 1867, McNeel proposed selling it to Brown, and they, Brown and McNeel, in negotiating, went to A. Watt Thompson, who then executed a bill of sale, of date 30th September, 1867, for the mill, to McNeel, who, selling it to Brown, assigned to him the bill of sale; that May 15, 1869, Brown sold the mill to plaintiff, indorsing the bill of sale to him.

The defense showed the deed from Mrs. Nancy Thompson to Wells Thompson and A. W. Thompson; deed of A. W. Thompson, for his interest, to Wells Thompson, of date November 26, 1866, recorded July 15, 1867, and Wells Thompson's sale and delivery of the mill to the agent of defendant.

It also appeared in evidence, that A. W. Thompson, at his sale, agreed with McNeel, that the mill could remain on the plantation until it should be convenient to move it; that Wells Thompson refused to ratify the sale to McNeel; and that at his purchase, McNeel did not know that A. W. Thompson had sold his interest in the plantation to Wells Thompson, and that A. W. Thompson was not the general agent of Wells Thompson.

The further facts necessary are given in the opinion.

The jury returned a verdict for plaintiff, and Hutchins appealed.

*Waul and Walker*, for appellant, cited Fains *v.* Walker, 1 Bailey, 540; Powell *v.* Monson & Co., 3 Mason, 459; Bratton *v.* Crawsen, 2 Strobh, 478; DeGraffenreid *v.* Stubbs, 4

Humph., 451; Cook *v.* Whitney, 16 Ill., 480; Schouler on Per. Prop., 150; 2 Kent, 441; Walker *v.* Sherman, 20 Wend., 636; Bringhoff *v.* Munzenmaier, 20 Iowa, 513; Richardson *v.* Copeland, 6 Gray, 536; 1 Stark. Ev., 594, 655: 1 Greenl. Ev., secs. 275, 276; Rockmore *v.* Davenport, 14 Tex., 604.

*William Fort Smith* and *Thos. G. Masterson,* for appellees.

MOORE, ASSOCIATE JUSTICE.—In no view which we have been able to take of this case, can the judgment be sustained.

On the trial in the court below, the presiding judge instructed the jury upon the hypothesis that in selling the mill in controversy, Asa Watt Thompson may have acted as the agent of the owner; but as there is no evidence in the record tending to show that he pretended to act in a representative character in the transaction, or was understood by purchaser as doing so, nor anything whatever shown which can be regarded as justifying or warranting an inference that he had any such authority—while on the other hand, the contrary seems to be clearly established,—it is unnecessary for us to give any consideration to this view of the case.

The validity of the judgment, consequently, depends entirely upon the fact whether said Thompson had any title to or interest in the mill at the time of the alleged sale under which it is claimed by appellees; and if so, whether this sale was legal, and vested in the purchaser a valid title to the mill as against Wells Thompson, the subsequent vendee of said Asa Watt Thompson's undivided half of the land. Before we can properly determine these questions, it is necessary that we shall ascertain what, in contemplation of law, was the true nature and character of the property at the time of the sale, upon which appellees rely to maintain their action. Was it a chattel, or was it so fixed or annexed to the land as to have become, in contemplation of law, a part of it?

The word "fixture," if a legal term, which Lord Campbell seems to doubt, it is universally conceded, is, as a substan-

tive term, of modern origin. And, as has been frequently said, there is no other legal term in so general use to which there has been more different and contradictory significations attached. (Ewell on Fixtures, 82.) To a great degree, this has been occasioned by the different standpoints from which the questions touching its application have been viewed: the relation of the parties regarding it, the degree of fixedness of the property involved, and the purpose or intention with which the article in question was annexed to or placed upon the land. The necessary consequence of this absence of certainty and uniformity in the use of the word, has occasioned confusion and conflict in the decisions on the subject, in respect to the rights of parties interested in its determination in the great number of cases in which, in recent times, it has been under discussion; and especially in reference to the proper tests for determining whether the particular article in question should be regarded as a fixture or not.

It is said, the weight of the modern authorities establish the doctrine that the true criterion for determining whether a chattel has become an immovable fixture, consists in the united application of the following tests:

1st. Has there been a real or constructive annexation of the article in question to the realty?

2d. Was there a fitness or adaptation of such article to the uses or purposes of the realty with which it is connected?

3d. Whether or not it was the intention of the party making the annexation that the chattel should become a permanent accession to the freehold?—this intention being inferable from the nature of the article, the relation and situation of the parties interested, the policy of the law in respect thereto, the mode of annexation, and purpose or use for which the annexation is made.

And of these three tests, pre-eminence is to be given to the question of intention to make the article a permanent accession to the freehold, while the others are chiefly of value as evidence as to this intention. (Ewell on Fixtures, 21, 22.)

It is also to be noted, that owing to the greater relative importance and value now attached to chattels than formerly, and, in the interest of manufacture and commerce, a much more liberal rule has been adopted, in determining whether or not chattels which have been placed upon land by lessees and tenants are permanently annexed to it, than once prevailed. It is well settled, however, that there has been no such modification in the ancient rule, in the absence of evidence of intention to vary their rights, as between grantor and grantee. (2 Kent, 345; Kinsill v. Billings, 35 Iowa, 154; De Graffenreid v. Stubbs, 4 Humph., 451.)

Tested by these well-established principles and rules for our guidance in determining the question, there can, we think, be no hesitancy in concluding that the mill in question was attached to and passed as a part of the realty, by the deed of Mrs. Thompson to her sons, Asa Watt Thompson and Wells Thompson. If it was not a part of the realty, but continued to be a chattel, and did not pass with the land by the deed, then it is not shown that said Asa Watt Thompson ever had any title to or interest in it. And as neither his vendor, nor any of the parties claiming under him, ever had possession of it, it follows that appellees have no foundation to support their action.

On the other hand, if the mill was annexed to and part of the land, a parol sale of it, even by the owner of the land, would be void, because in conflict with the statute of frauds. (Landon v. Platt, 34 Conn., 517; Myers v. Schimp, 67 Ill., 469.) And if this was not so, as the property still remained annexed to the land, it must be held that the vendee, Wells Thompson, who had no notice of the previous contract for the sale of the mill by his vendor, got, by his deed, the better title. (Bringhoff v. Munzenmaier, 20 Iowa, 513; Richardson v. Copeland, 6 Gray, 536.)

REVERSED AND REMANDED.

Justice Gould did not sit in this case.