## DALLAS JOINT STOCK LAND BANK OF DALLAS v. LANCASTER.

### No. 1803.

Court of Civil Appeals of Texas. Waco.

Dec. 24, 1936.

Rehearing Denied Jan. 28, 1937.

Renfro, McCombs & Kilgore and Searcy L. Johnson, all of Dallas, for appellant.

Munroe & Holt and Geo. W. Barcus, all of Waco, for appellee.

ALEXANDER, Justice.

In September, 1929, the Dallas Joint Stock Land Bank sold and conveyed to C. M. Lancaster 360 acres of land near the city of Waco and retained a vendor's lien to secure the payment of a note in the sum of $29,000, payable in stipulated annual installments. Some of these installments were paid as they matured, but as the depression came on Lancaster was unable to meet his payments. In April, 1934, the Land Bank, claiming that Lancaster had failed to meet his payments as per his agreement, filed suit in the district court of Dallas county for its debt and for foreclosure of its lien. At the same time it sued out writ of sequestration and dispossessed Lancaster. On July 17, 1934, the bank took judgment for the sum of $31,602.08, the amount of its debt, with interest and attorney's fees and for foreclosure of its lien. Later, the land was sold under said foreclosure proceedings and bought in by the bank for approximately the amount of its judgment. Thereafter, Lancaster filed this suit in the district court of McLennan county to recover the damages alleged to have been suffered by him as the result of the alleged unlawful suing out and enforcement of said writ of sequestration. The pleadings and evidence show that Lancaster was a dairy man engaged in producing and selling milk to customers in the city of Waco, and owned and maintained on said farm a large dairy herd for that purpose. As a part of the consideration for the purchase of the farm in question, he was required to place permanent improvements on the land to a value of $5,000. The evidence showed that he actually placed permanent improvements thereon of the value of approximately $11,000. These improvements consisted of a large dairy barn, gravel roads, wells, and other accessories. At the time the writ of sequestration was levied and Lancaster dispossessed, he had on said farm boilers, motors, compressors, a brine tank, an electrical generator, and

other equipment necessary in milking the cows and cooling the milk. The sheriff, in levying the writ of sequestration, with the approval of the Land Bank's agent, took possession of a large part of this equipment. As a result of being so dispossessed, Lancaster was unable to immediately secure suitable quarters for operating his dairy, and as a consequence he suffered considerable loss in his dairy business. The jury, in answer to special issues, found that the facts stated in the affidavit for the writ of sequestration were untrue, and that the writ of sequestration was sued out with malice and without probable cause, and that the following articles of equipment belonging to Lancaster and taken possession of under the writ of sequestration were not attached to the building in which they were situated with the intention that they should remain a part thereof, to wit: Compressor valued at $80; motor valued at $280; brine tank valued at $75; galvanized pipe valued at $12.50; boiler valued at $75; generator and switchboard valued at $200; three horsepower engine valued at $50; pump valued at $40; and a cypress tank valued at $10, making a total of $822.50. It was further found that Lancaster sustained actual damage to his business in the sum of $660 as the result of the issuance and levy of the writ, and that he was entitled to recover exemplary damages in the sum of $2,127.50. Based on the verdict, the court rendered judgment for plaintiff for the sum of $3,610. The defendant appealed.

▆▆ Appellant's first contention is that since it held a vendor's lien on the land, it had a superior title thereto, and upon default by the purchaser it was entitled to the possession of the land, and since it was entitled to possession of the land, it was not liable in damages for the taking thereof under writ of sequestration, even though said writ was unlawfully sued out. If appellant had elected to disaffirm the sale and to sue for possession of the land, it might have had rights such as are contended for by it; but when it brought suit for its debt and to foreclose its lien, it thereby elected to affirm the sale and waived its right to demand possession of the property. Under such circumstances, the appellant occupied the position of mortgagee, and the appellee, as mortgagor, had the right to retain possession and use of the land until sale took place under the foreclosure proceedings. Hill v. Preston, 119 Tex. 522, 34 S.W.(2d) 780, par. 4; Dallas Joint Stock Land Bank v. Lancaster (Tex.Civ.App.) 91 S.W.(2d) 890, par. 3; 43 Tex.Jur. 342. If appellant obtained possession of the property in the meantime by the unlawful use of a writ of sequestration, it is liable in damages for the consequences.

▆▆ Appellant's second contention is that the dairy equipment, for the conversion of which it was held liable, was of such character and was so attached to the permanent improvements on the farm as to constitute it a part of the realty so that the title thereto passed to appellant under foreclosure proceedings. The evidence shows that most of the machinery in question was situated in a small building on the premises adjoining the main dairy barn. Appellee testified that the building was intended only as a temporary structure and that he had intended to erect a more substantial building for housing the machinery as soon as he was able. The Waukesha motor, valued by the jury at $280, was used to pull the generator for the lighting system and the machine for milking the cows and for operating the cooling system for the milk. It was described as being fifty-six horsepower, four or five feet long by four feet wide and was set on skids or angle irons so that it could be moved about from place to place in the building. The brine tank had a capacity of 500 gallons of water and was supported by four legs setting on top of the ground outside of the building and was used to keep the motor cool. The boiler had a capacity of six horsepower and was used to manufacture steam for cleansing the vessels used about the dairy. It was set on the concrete in the building but was not fastened thereto. The generator and switchboard had a capacity of ten horsepower and was operated by the motor above referred to. It was fastened by screws to boards that were bolted to the concrete. The compressor was used in creating the vacuum necessary to the operation of the milking machine. Its size is not shown. It was fastened to boards that were bolted to the concrete. The galvanized pipe referred to was the connecting link between the compressor and the cows that were milked with the machine. This pipe was laid around the side of the building and fastened to it by small clamps. There is no contention that the three horsepower engine and the pump used in connection

1032

therewith constituted any part of the realty. As before stated, the jury found that none of the above equipment was attached to the building with the intention that it should remain a part thereof. We do not think the evidence shows the contrary with such certainty that reasonable minds could not differ as to the effect thereof. In other words, we think the evidence raised a question for the jury and that the finding of the jury is binding on the court. In this connection, it should be noted that appellant does not stand in the position of a good-faith purchaser of the land who purchased the same in the belief that the equipment constituted a part of the property being bought, as was the case before the court in Citizens' National Bank v. Elk Manufacturing Co. (Tex.Com.App.) 29 S.W.(2d) 1062, relied on by appellant. Here, the equipment was not on the premises at the time appellant's lien was retained: Therefore, it will suffer no injury if it is denied a lien thereon. None of the equipment appears to have been so attached to the permanent improvements as to injure same in the event of its removal. Ordinarily, the question of whether or not personal property of this character has become a part of the realty depends on the intention with which it was so annexed, and this involves a question of fact to be determined by the jury. 19 Tex.Jur. 707, 713; Hutchins v. Masterson, 46 Tex. 551, 26 Am.Rep. 286; Murray Co. v. Simmons (Tex.Com.App.) 229 S.W. 461, and authorities there cited.

Appellant's third contention is that the trial court erred in allowing appellee to recover the sum of $660 for loss of profits in his dairy business occasioned by the execution of the writ of sequestration. The evidence discloses that at the time of the levy of the writ, appellee owned a large dairy herd, had his premises equipped with the most modern equipment for supplying high-class milk, and had a large number of customers in the city of Waco to whom he supplied milk at retail. He was earning a net profit of approximately $600 per month. As the result of his being unlawfully dispossessed by the writ of sequestration, he was compelled to seek other quarters. Some time was required to equip the new premises so as to meet the requirements of the city ordinances. He could not find accommodations for all of his cows and those that he did move to the new premises decreased in the production of milk as the result of being so moved. In the meantime, he could not supply the demand of his customers, and as a consequence he lost many of them. His expenses for additional help and extra feed at the new premises were much higher than at the old place. As a consequence, there were no net profits. He had the lawful right to continue to use the old premises from which he was ejected by writ of sequestration and to enjoy the fruits thereof until sale took place under the foreclosure, Dallas Joint Stock Land Bank v. Lancaster (Tex.Civ.App.) 91 S.W.(2d) 890, par. 3, and authorities there cited, and the evidence shows that he would have done so had he not been so unlawfully dispossessed. There are authorities in this state which hold that loss of profits of business is not an element of actual damages for the unlawful suing out of a writ of sequestration or writ of attachment. Kirbs v. Provine, 78 Tex. 353, 14 S.W. 849; Kaufman & Runge v. Armstrong, 74 Tex. 65, 11 S.W. 1048; Ullmann, Stern & Krausse, Inc., v. Rogers (Tex.Civ.App.) 288 S.W. 1109, par. 6; J. M. Radford Grocery Co. v. Hothan (Tex. Civ.App.) 42 S.W.(2d) 119. Such rule, however, has application only where the suit is to recover the value of the property taken and where its value will fully compensate the injured party for the losses sustained. It has no application where, by reason of the unlawful levy of the writ, the injured party has been deprived of the use of his premises for a time and his business has been interrupted in the meantime. In such case, the value of the property taken, or the value of the use thereof, as for example its rental value during such period, might not fully compensate the injured party for the losses so sustained. In such case, the injured party is entitled to recover the value of the profits lost as the proximate result of the unlawful detention of his property. Stokes v. Snyder (Tex.Com. App.) 55 S.W.(2d) 557, par. 4; Texas & Pac. Ry. Co. v. Mercer (Tex.Com.App.) 90 S.W.(2d) 557; Wilson v. Manning (Tex.Civ.App.) 35 S.W. 1079, par. 1; Hamlett v. Coates (Tex.Civ.App.) 182 S.W. 1144, par. 6 (writ ref.); Steel v. Metcalf, 4 Tex.Civ.App. 313, 23 S.W. 474; Halcomb v. Stubblefield, 76 Tex. 310, 13 S.W. 231; 5 Tex.Jur. 343; 38 Tex.Jur. 273.

Appellant contends there was insufficient evidence to show malice and want of probable cause in suing out the writ. There was evidence that the parties by mutual agreement had changed the terms of the loan so as to allow monthly payments; that Lancaster had met the payments as they matured and that he tendered payment for the current month but the Land Bank refused to accept same. It was alleged in the affidavit for sequestration that it was feared that Lancaster would "make use of such possession to injure the property or would seize and convert to his own use the timber, rents, fruits and revenues of such property." There was no timber on the premises. Lancaster had the right of possession of the land and the rents, fruits, and revenues belonged to him and he had a right to convert same to his own use. There was no evidence of any ground for fear of injury to the property. Lancaster had placed approximately $11,000 worth of improvements on the premises and was keeping same in good repair. The Land Bank knew, or should have known, that it had no right to dispossess appellee. Apparently, in total disregard of appellee's rights, it undertook to take the property from him. There was an absence of probable cause, and we think the evidence was sufficient to authorize the jury to infer malice on the part of appellant. 38 Tex.Jur. 277; Wood v. Ingram (Tex.Civ.App.) 275 S.W. 397, par. 8, and authorities there cited. It is true, the affidavit was made by attorney for appellant, and there was no evidence of any malice on his part. However, the evidence shows without dispute that he was instructed to make the affidavit by the officers of the company. If the company, or its officers, were actuated by malice, the company would be liable even though the particular agent who made the affidavit had no malice.

Complaint is made of certain argument for counsel for appellee in his closing argument to the jury. The bills of exception show that the argument complained of was in reply to similar argument by counsel for appellant, and therefore the assignment does not present reversible error. 41 Tex.Jur. 798; Gulf Ref. Co. v. Rogers (Tex.Civ.App.) 57 S.W.(2d) 183, par. 7.

The judgment of the trial court is affirmed.