## BURNS

### v.

## UNION STATE BANK OF CARRIZO SPRINGS.

### No. 12651.

Court of Civil Appeals of Texas.

San Antonio.

Jan. 27, 1954.

Rehearing Denied Feb. 24, 1954.

Farrow & Johnson, Carrizo Springs, for appellant.

Petry & Dean, Carrizo Springs, for appellee.

## W. O. MURRAY, Chief Justice.

This is an appeal by W. H. Burns from a judgment rendered in the District Court of Dimmit County in favor of the Union State Bank of Carrizo Springs, Texas, in the sum of $1,043.29, being the amount of principal, interest and attorney's fees due on a certain promissory note in the principal sum of $890.85, payable to Union State Bank of Carrizo Springs, dated May 15, 1952, due on December 15, 1952, bearing interest until maturity at the rate of 7% per annum, and after maturity at the rate of 10% per annum, providing for the usual 10% attorney's fees, and signed by J. F. Thornton. The judgment also provided for foreclosure of a chattel mortgage lien upon an electric motor fully described, and was rendered against W. H. Burns and the two sureties upon his replevy bond, A. A. Kimble and H. H. Stone. J. F. Thornton was. decreed .to be secondarily liable upon the judgment.

Appellant's first three points are presented and argued together. They present the contention that the alleged chattel mortgage did not create a valid lien upon the electric motor, because (1) it was not executed in conformity with Art. 5498, Vernon's Ann.Civ.Stats. (2) The electric motor had already been installed and had become a part of the realty before the chattel mortgage was executed.

The evidence shows that the mortgage recited: "This mortgage given as purchase price of the above motor from Samsco. of Crystal City, Tex. This motor is to be placed on Realty. This mortgage given and filed before this motor is installed." At the time the chattel mortgage was filed it did not have endorsed upon. it the description of the land upon which it was to be installed, as is required by Art. 5498, supra. The county clerk phoned the bank on the same day the chattel mortgage was filed and called the matter to the attention of someone at the bank, who told her the motor was to be installed on the "Roe Farm," and, accordingly, she endorsed on the mortgage, "Roe Farm," but some time later someone called from the bank and said the motor was to be installed upon the "Burns Farm," so the clerk erased the words "Roe Farm" and endorsed on the mortgage: "On Burns Farm Southwest Dimmit County."

However, this matter would be important only if in fact the motor had been installed in such a manner as to become a part of the realty. The record is silent, as far as we can ascertain, as to the manner in which the motor had been installed. If in fact it was installed in such a manner ' that it could be removed without doing harm to the realty, then it had not become a fixture and the chattel mortgage would create a valid lien on· the motor. Texas Power & Light Co. v. Malone, Tex.Civ.App., 42 S.W.2d 845; Weisenberger v. Lone Star Gas Co., Tex.Civ. App., 257 S.W.2d 331. The burden would be upon the party contending that the motor had become a part of the realty to plead and prove such fact.

If the motor had not become a fixture at the time Burns bought the farm at the trustee's sale, then he would not get the motor by reason of such purchase.

As to whether the motor had already been installed at the time the chattel mortgage was given, the evidence was conflicting on this point and the issue was resolved against appellant when the trial court found for appellee. As above stated, if the motor was not installed in such a manner as to make it a part of the realty, it would be immaterial as to when it was installed.

The motor was sold to J. F. Thornton, who signed the note and the chattel mortgage here involved. Thornton owned the Burns Ranch at the time he bought the motor and borrowed the money from the bank to pay for it. The Franklin Life Insurance Company of Springfield, Illinois, held a first mortgage on the farm and Burns held a second. A trustee's sale was had under the second mortgage in March,

1953, and at this trustee's sale Burns bought the farm, which he had previously owned and had sold to J. F. Thornton, reserving the above-mentioned second lien.

■ It is the contention of appellee bank that prior to the trustee's sale officers of the bank informed Burns of their note and mortgage on the electric motor, and then Burns agreed that if the bank would leave the motor on the land he would buy it from them and pay therefor by assuming the note and mortgage. Burns denied making any agreement to buy the motor. The trial court gave judgment against Burns for the full amount of the principal, interest and attorney's fees provided for in the note.

Appellant contends that placing the most favorable light on the testimony for appellees, it goes no further than to show that Burns agreed to buy the motor—it does not show what he agreed to pay for it or what its value was.

We have been unable to find any evidence which would justify a finding that Burns agreed to pay the amount of principal, interest and attorney's fees due upon the note as a consideration for the motor. The only evidence we are able to find, as to what Burns was to pay for the motor, was given in response to a question asked by the court as follows:

"The court: What was the consideration? A. $890.00—Whatever the amount of the note was.

The principal amount of the note was $890.85. We cannot construe this answer as meaning anything other than that Burns agreed to pay the amount for which the note was given. We cannot construe it, even when considered along with all the rest of the evidence, as meaning that Burns agreed to pay not only the principal of the note but all past-due interest, and to pay attorney's fees in the event the note was placed in the hands of an attorney. The trial court erred in rendering judgment for any amount in excess of $890.85, together with interest at the rate of 6% per annum from the date of the judgment until paid.

Accordingly, the judgment will be reformed so as to reduce the amount thereof from $1,043.29 to $890.85, and as thus reformed it will be affirmed. Appellee, Union State Bank of Carrizo Springs, Texas, to pay all costs of this appeal.

Reformed and affirmed.