**MILLERS MUTUAL FIRE INSURANCE COMPANY, Appellant,**

v.

**Lloyd H. JACKSON, Appellee.**

No. 7169.

Court of Civil Appeals of Texas.

Amarillo.

June 25, 1962.

Jones, Parish, Fillmore, Robinson & Lambert, Wichita Falls, for appellant.

Storey & Sheridan, Vernon, for appellee.

CHAPMAN, Justice.

This is an appeal by Millers Mutual Fire Insurance Company from a judgment based upon a jury verdict rendered upon a suit on a fire insurance policy to recover damages caused by fire to gin machinery and equipment owned by appellee.

The policy of insurance upon which the suit was based contained the following provisions under the heading, "Warranties by the Insured:"

"(a) Should fire occur on gin property—that a watchman shall be maintained con-

tinuously for 24-hours thereafter. This requirement is waived during hours when gin is in operation with full work force on duty."

"(b) Bale cotton on gin plant premises— that as to any building insured while ginning crew is not on premises, no baled cotton will be stored or kept temporarily in or within 40 feet thereof on the platform attached thereto. * * *"

"(c) This company shall not be liable for loss by fire or lightening occuring during failure to comply, in so far as same is under insured's control, with any or all of the warranties or conditions."

Article 6.14 of the Insurance Code, V.T. C.S., provides: "No breach or violation by the insured of any warranty, condition or provision of any fire insurance policy, contract of insurance, or applications therefor, *upon personal property,* shall render void the policy or contract, or constitute a defense to a suit for loss thereon, unless such breach or violation contributed to bring about the destruction of the property."

All emphasis shown herein are ours unless otherwise designated.

It has been held that the purpose of Article 6.14 is to prevent insurance companies from avoiding liability under technical provisions of their policies where the act of the insured breaching such technical provisions does not contribute to the loss. Holston et al. v. Implement Dealers Mut. Fire Ins. Co., 5 Cir., 206 F.2d 682.

The jury found a fire occurred on the gin property within 24-hours of the time of the fire in question; that appellee failed to maintain a watchman continuously for 24 hours after such fire occurred on the gin property; that appellee left a bale of cotton within 40 feet of the platform of the gin; and that he kept baled cotton on the platform of the gin while the ginning crew was not on the premises.

However, on questions submitted the jury found none of these situations con-

tributed to bring about the damages. Therefore, the first question with which we are presented is whether the damaged property was personalty or real property. If personalty the jury's answer had the effect of voiding the warranties because of Article 6.14, supra, of the Insurance Code providing no breach of the warranties shall constitute a defense to damages to *personal property* unless such breach[s] contributed to bring about the destruction of the property, which, as stated, the jury found they did not.

The contract of insurance by the parties hereto provides: "It is understood and agreed that *each item, or subject of insurance under this policy (other than the building or buildings) is, for the purpose of this contract of insurance, to be treated and considered as personal property.*"

In submitting the issues the court inquired of the jury if the different warranties were violated and then asked if such violations contributed to bring about the damages *to the personal property in question.* Thus, the court in the submission of the issues assumed the machinery and equipment, the loss of and injuries for which damages were sought, were personal property. Probably such assumption was based upon the agreement of the parties to the insurance contract, as shown in the preceding paragraph.

However, appellant did not at any place in the record before us object to that form of submission but simply objected to the giving of the issues "for the reason that the uncontradicted evidence shows that * * * all of said fixtures, machinery and equipment, as a matter of law, became real property.

It has been held that the burden is upon the party contending that a motor had become a part of the realty to plead and prove such fact. Burns v. Union State Bank of Carrizo Springs, Tex.Civ.App., 265 S.W.2d 164. (N.R.E.). It has also been held that ordinarily the question of whether person-

alty has become part of the realty depends on the intention with which it was annexed, and such question involves one of fact for the jury. Dallas Joint Stock Land Bank of Dallas v. Lancaster, Tex.Civ.App., 100 S. W.2d 1029, (Writ dismissed); City of Houston v. Priester et al., Tex.Civ.App., 302 S.W.2d 948. Thus we do not believe it can be said from this record that the damaged or destroyed machinery and equipment was as a matter of law a part of the realty.

The contract of insurance lists and values the items separately, listing the buildings separate from the machinery and equipment. One item listed in the policy and insured for $33,540.00 was: "On fixed and movable furniture, fixtures, machinery and equipment of all kinds incident or necessary to the handling and ginning or reginning and baling of cotton. * * *" Outside of the electrical equipment this item included practically all the damaged equipment for which recovery was sought. Under such item were the two press boxes which appellee testified were not attached to the building. Also damaged was the condenser and several lint cleaners. Appellee testified the condenser was mounted on the lint cleaner which was installed by sliding it into place on the floor of the building. There is evidence to show the lint cleaner was stationary so it would not slide around on the floor but no probative evidence it was attached to the building by bolts, screws, or nails. There is evidence that the machinery wears out often and is replaced from time to time; that it is not made a permanent part of the building and can be removed; and that practically every year something has to be replaced.

Our Supreme Court in the very early case of Hutchins v. Masterson, 46 Tex. 551, 554 established certain criteria to determine whether a chattel has become an immovable fixture in the following language:

"It is said, the weight of the modern authorities establish the doctrine that the true criterion for determining whether a chattel has become an immovable fixture, consists in the united application of the following tests:"

"1st. Has there been a real or constructive annexation of the article in question to the realty?

"2d. Was there a fitness or adaptation of such article to the uses or purposes of the realty with which it is connected?

"3d. Whether or not it was the intention of the party making the annexation that the chattel should become a permanent accession to the freehold? —this intention being inferable from the nature of the article, the relation and situation of the parties interested, the policy of the law in respect thereto, the mode of annexation, and purpose of use for which the annexation is made.

"*And of these three tests, pre-eminence is to be given to the question of intention to make the article a permanent accession to the freehold, while the others are chiefly of value as evidence as to this intention.* (Ewell on Fixtures, 21, 22.)

"It is also to be noted, that owing to the greater relative importance and value now attached to chattels than formerly, and, in the interest of manufacture and commerce, a much more liberal rule has been adopted, in determining whether or not chattels which have been placed upon land by lessees and tenants are permanently annexed to it, than once prevailed. It is well settled, however, that there has been no such modification in the ancient rule, *in the absence of evidence of intention* to vary their rights, as between grantor and grantee."

In still an earlier case involving gin machinery that court in Cole v. Roach, *37*

Tex. 413, in referring to "Hill on Fixtures" has said:

"Again, the same author says that *it requires a positive act of the person making the annexation to change a chattel to a fixture;* the intention to make the article a permanent annexation to the realty must, generally, affirmatively, and plainly appear, and *where there is a doubt or uncertainty the legal qualities of the article are not changed and it must be deemed a chattel.*"

In the same opinion the court has quoted with approval from another authority as follows:

"I have examined a good many English and American cases, and they are almost uniformly hostile to the idea of mere loose, movable machinery, even where it is the main agent or principal thing in prosecuting the business to which a freehold property is adapted, being considered apart of the freehold for any purpose."

■ As may be seen from these statements by the Supreme Court and as so succinctly stated in Hutchins v. Masterson, supra, pre-eminence is to be given to the question of intention concerning whether a chattel becomes legally a permanent annexation to the freehold. This rule is followed in Murray Co. v. Simmons et al., 229 S.W. 461 (Tex.Com.App., approved by S.C.). It is sometimes difficult to determine the intention of the parties as to whether property being dealt with shall remain personalty. No such difficulty is presented here because the parties agreed in writing that each item or subject of insurance other than the buildings should be considered as personal property.

■ From the facts above related concerning the machinery and equipment,

on the authority of the statements of the Supreme Court above quoted, and because we are required to indulge every reasonable intendment in favor of the verdict we hold the record in this case does not show the damaged property to be a part of the realty as a matter of law. Since appellant attacked the charge only upon that basis we believe its points based thereon are without merit.

We are not unmindful of the Axe and Elk cases[1] involving gin machinery but there are many material distinguishing features in those cases and the instant case. In the former, involving an insurance policy similar to ours, the court stated the engine and machinery were attached to the building and intended to be permanent fixtures and the gin stands were attached to the sills set in concrete in the floor and there was not any part thereof that was not attached as part of the realty. In the latter a lien was involved rather than an insurance policy, the burr extractors involved were nailed or screwed to a platform 20 to 30 feet long built across the center of the building connecting with the floor, they weighed 9000 pounds and if removed would have resulted in injuries to the building. Additionally, in neither of the cases did the Supreme Court do more than agree with the results reached by the Commission, whereas, in the Murray case above cited the Supreme Court approved the holding as correct. Also, in the Elk case there is no record of an agreement between the parties that the machinery, for the purpose of the contract of insurance, was to be treated and considered as personal property.

The next group of points present what appears to us to be a much more serious question, which is that there is no evidence to support the judgment for $5,252.00.

The court in submitting the issue on damages defined damages as: "the reasonable and necessary cost of repair and/or re-

---

1. Export Ins. Co. of New York v. Axe et al., Tex.Com.App., 58 S.W.2d 39; Citizen's Nat. Bank of Abilene et al. v.

Elk Mfg. Co., Tex.Com.App., 29 S.W.2d 1062.

placement of such fixtures, machinery and equipment of all kinds, incident or necessary to the handling and ginning or reginning and bailing of cotton contained in the gin building, including the costs of labor and material necessary to repair and/or replace such items with items of like kind and quality within a reasonable time after the loss." No objection was made to the definition.

■ Appellee testified he had already paid $1543.28 for repairs and that outside of the electrical equipment it would require an expenditure of $3250.00 to put the equipment back into shape. He testified he needed a saw cylinder at the cost of approximately $2000.00 and two doffin rolls at a cost of $750.00 each. These were three of the items that went into making the $3250.00-figure mentioned. Yet on cross-examination at the conclusion of the testimony he admitted he was $615.00 too high on each of the doffin rolls and that they cost $135.00 each instead of $750.00 each. He also admitted he was $1400.00 too high on the saw cylinder and that it cost $600.00 rather than $2000.00. In view of such admissions and in the absence of any other probative evidence by which the jury could have arrived at $5,252.00, we believe we are without legal authority to affirm a judgment for that amount. We recognize wide latitude is given the jury on damages in personal injury cases but we do not believe affirmance can be justified when there is such wide variance with the judgment rendered and the testimony of the plaintiff himself when personal property is involved on which replacement costs may be as specific as here.

■ By appellee's own admissions the amount of $3250.00 would be $2630.00 too high for the parts he testified he needed. There is sufficient evidence to justify a verdict and judgment of the amount awarded less than $2630.00. Therefore, under the authority of Rule 440, V.A.T.R., this court is under a legal obligation to reverse and remand the case unless appellee files a re-

mittitur in the amount of $2630.00, the excessiveness being the only reason we find it necessary to reverse. Dallas Ry. & Terminal Co. v. Farnsworth, 148 Tex. 584, 227 S.W.2d 1017.

Therefore, this case is reversed and remanded unless within 14 days from the date of this opinion Lloyd Jackson files a remittitur in the amount of $2630.00. In the event such remittitur is filed the judgment of the trial court will be reformed to conform with the above conclusion and as reformed affirmed.