

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN, TEXAS 78711

CRAWFORD C. MARTIN
ATTORNEY GENERAL

December 28, 1972

Honorable Robert S. Calvert        Opinion No. M-1289
Comptroller of Public Accounts
Finance Building                   Re:  Whether certain oil refinery
Austin, Texas 78711                     units on oil company land
                                        when severed by sale and
                                        leased by oil company from
                                        owner, are personal property,
Dear Mr. Calvert:                       and whether the contract
                                        involved is lease or financ-
                                        ing agreement.

We are in receipt of your request for an official opinion,
quoted as follows:

> "Signal Oil & Gas Company has entered into con-
> tracts with contractors to build on its property
> at its Houston refinery four refinery units (Iso-
> Siv Unit, Ethyl Benzene Unit, Para-Zylene Unit,
> and Iso-Max Unit) at an approximate cost of
> $17,416,000.00. Prior to their accepting the
> units and after having made substantial payment
> to the contractors, Signal directed the contrac-
> tors to transfer such units to Bank of America
> National Trust and Savings Association of Los
> Angeles, California. The Bank thereafter remitted
> the approximate cost of the units to the respective
> contractors who in turn remitted such sums to Signal
> for the release of any claims Signal had on the
> Units.
>
> "At the same time Signal and the Bank entered
> into lease contracts, a copy of which is attached
> hereto, on the four units. Section VIII of the
> contracts concerning return of equipment states
> that the Lessee (Signal) will return each Unit
> to the Lessor (the Bank) and that the Lessor or
> its assignees shall have the right to remove
> each Unit at the termination of the lease. Sec-
> tion IX relating to default provides that upon
> the occurrence of specified events the Lessor,

-6320-

at its option, may terminate the lease and take possession of the Units which can then be leased or sold by the Lessor. Section XI, 'Miscellaneous', includes the following:

"Nothing herein contained shall be deemed to give Lessee any right, title or interest in or to any of the Units leased hereunder except as Lessee hereunder.

"Each Unit is, and shall at all times be and remain, personal property notwithstanding that any Unit or any part thereof may now be, or hereafter become, in any manner affixed or attached to, or imbedded in, or permanently resting upon, real property or any building thereon, or attached in any manner whatsoever to what is permanent as by means of cement, plaster, nails, bolts, screws, gravity or otherwise. , . . (Emphasis Added)

"The Units in question are substantially affixed and attached to Signal's realty, see attached photographs. The lease contract does not provide that title shall ever vest in Signal or that Signal shall have the right to purchase such units. However, by separate agreement Signal agreed to purchase the Units from the Bank should they not enter into the subject lease agreement, see attached letter.

"Your official opinion is consequently requested as to the following two questions:

"1. Are the above described units tangible personal property within your Opinion No. M-298?

"2. Should the answer to the first question be in the affirmative, does the agreement between Signal and the Bank constitute a financing agreement as contended by Signal rather than a lease?"

The question as to whether improvements on property are to be considered personalty or as a fixture and therefore real property, has been a subject that has been considered by scholars and has been before the courts on many occasions. In 25 Tex. Jur.2d, Fixtures, Sec. 7, at page 339, we find:

"Chattels lose their identity as personal property where they are so annexed to the realty that they cannot be detached without damage to the freehold, or without destroying the usefulness of the property to which they are annexed. Conversely, the things affixed retain their character as personal where they can be removed with slight or no injury to the realty, or to themselves."

The photographs attached to your request clearly show that the improvements are extensive, and the factual information contained in Signal's brief set forth the following information concerning the same, to-wit:

"The improvements have foundations with an average depth of approximately fifteen feet placed upon pilings, 100 to 700 to number beneath each foundation, each piling averaging 35 feet in depth. The foundations and pilings are made of reinforced concrete and steel and are designed to support weights and pressures comparable to those of many large office buildings. One unit is actually more than 20 stories tall. The foundations have curbs and gutters, underground drainage, and many other construction features similar to building foundations. All structures are connected by piping to other permanent refinery units and have supply lines for water and other utilities. The concrete superstructures themselves extend as high as four stories. Each structure is permanently affixed to the foundation. To the extent that any component part could be removed, considerable damage would be done and the removed parts could be sold only for scrap value. It would be a physical impossibility to sever the structures from the ground and move them intact to a new location."

From the photographs and the description of the facilities, it seems clear that the same cannot be removed without damage to the freehold or without destroying the usefulness of the property upon which they are situated as well as to the fixtures themselves.

Section X of the lease agreement between the Bank of America National Trust and Savings Association, as lessor and Signal

Oil & Gas Company as lessee, gives the lessor the right of removal of the leased units at the termination of the lease. While the right of removal of personalty has been considered a factor in deciding whether property was personalty or had become a part of the realty, it would appear that the classical tripartite approach set forth in Hutchins v. Masterson & Street, Assignees & C., 46 Tex. 551 (1877), is applicable in this instance. The tests set forth in the Hutchins case are as follows:

> "It is said, the weight of modern authorities establish the doctrine that the true criterion for determining whether a chattel has become an immovable fixture, consists in the united application of the following tests:
>
> "1st.  Has there been a real or constructive annexation of the article in question to realty?
>
> "2nd.  Was there a fitness or adaptation of such article to the uses or purposes of the realty with which it is connected?
>
> "3rd.  Whether or not it was the intention of the party making the annexation that the chattel should become a permanent accession to the freehold? - - (a)  this intention being inferable from the nature of the article, (b) the relation and situation of the parties interested, (c) the policy of the law in respect thereto, (d) the mode of annexation and purpose or use for which the annexation is made."

This test has been numerously approved and cited in this State. E.G., Carter v. Straus - Frank Company, 297 S.W.2d 195, 197 (Tex.Civ.App. 1956, no writ); Public Service Company v. Smith, 31 S.W.2d 472 (Tex.Civ.App. 1929, error dism.).

Due to the character of the improvements placed on the realty, and based on the authorities cited above, we believe that the property covered in your request is real property.

Our answer to your first question being a negative one, we do not consider it necessary to answer the second question.

## S U M M A R Y

Refinery units constructed on land owned by gas company are determined to be real property.

Very truly yours,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by Gordon C. Cass
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

W. E. Allen, Chairman

J. E. Broadhurst
Milton Richardson
Roland Carlson
Melvin Corley

SAMUEL D. McDANIEL
Staff Legal Assistant

ALFRED WALKER
Executive Assistant

NOLA WHITE
First Assistant