**William H. FENLON, Trustee, Appellant,**

**v.**

**Morris JAFFEE, Individually and d/b/a Central Park Mall, Appellee.**

**No. 1015.**

Court of Civil Appeals of Texas, Tyler.

June 23, 1977.

Rehearing Denied July 21, 1977.

Evelyn H. Biery, Bruce Waitz, Law Office of Bruce Waitz, San Antonio, for appellant.

Pat Priest, San Antonio, for appellee.

DUNAGAN, Chief Justice.

This is a conversion suit. Suit was brought by William H. Fenlon, Trustee in Bankruptcy, in the matter of Michel's Parfumes, Inc., Bankrupt, hereinafter called appellant, against Morris Jaffee, individually and doing business as Central Park Mall, hereinafter called appellee. Appellant in his original petition alleged that appellee, as landlord of appellant's predecessor in interest (Michel's Parfumes, Inc., Bankrupt), wrongfully took and converted appellant's "kiosk," a type of structure used as a retail outlet and located in appellee's shopping mall according to a written lease between appellee as landlord and Michel's Parfumes, Inc. as lessee. Appellant sought damages in the amount of $16,000.00, or, in the alternative, sought legal title and possession of the kiosk.

The case was tried before the court without a jury, and judgment was rendered that appellant take nothing by his suit against appellee. The court in its judgment stated certain recitations; otherwise, there were no requests for findings of fact and conclusions of law, and none were filed.

Appellant thereafter timely perfected this appeal, alleging six points of error in his brief. In points of error numbers one and four appellant alleges the court erred in holding that title to the kiosk passed to the appellee because the kiosk was personalty and appellee's acts in taking possession of the kiosk constituted an act of conversion. In points of error numbers two and three appellant alleges the court erred in holding that appellee obtained title to the kiosk by foreclosing a lien and through abandonment by appellant. In his final points of error numbers five and six appellant complains of the court's alleged finding of the value of the kiosk and also complains of the introduction of certain testimony. Appellee presents seven counterpoints contesting each of appellant's points of errors and also argues that no findings of fact or conclusions of law were made.

We affirm.

Pursuant to a written lease executed on October 15, 1970, Michel's Parfumes, Inc. leased from appellee an area known as area 131 in appellee's Central Park Mall located in San Antonio, Texas. Area 131 was retail space being some 20 × 26 feet in size. The lease granted a five year term with two additional five year optional terms. The agreed rental for the initial lease term was $500.00 per month. No rentals were ever paid.

The lease authorized the construction of improvements on area 131. Michel's Parfumes, Inc., lessee, hired O. C. Sinclair, a general contractor, to construct a structure on area 131. The structure, called a "kiosk" in construction parlance, was designed as an outlet for retail sales. Sinclair agreed to build the kiosk on a cost plus twenty percent basis, which ultimately amounted to $19,747.74. Sinclair, with the help of hired subcontractors, finished construction of the kiosk. The kiosk was constructed out of "wood and stucco." The kiosk was affixed to the mall floor by driving concrete nails through lumber comprising the bottom boards of the walls of the kiosk. The kiosk contained, besides its open space for retail operations, two lavatories and several small dressing rooms. The kiosk was fully sup-

plied with plumbing and electrical facilities, with the plumbing and electrical conduits coming up through the floor. The kiosk had a roof which was not attached to the ceiling of the mall. The record indicates that the kiosk was a sturdy and solidly built building and, had it stood on open ground, was capable of withstanding extreme natural forces; that no other kiosk in the mall was of such sturdy construction; and that its strong construction gave it no additional value for the function which it served since it was completely enclosed in the mall.

Sinclair, the contractor, testified that after the kiosk was completed there remained unpaid on the construction price an approximate amount of $1,250.00. A lawsuit resulted between Sinclair and appellee, although the record is not clear in what capacity Sinclair sued appellee. In his original answer, appellee alleged, but at trial failed to offer any proof, that Sinclair's suit was based on mechanic's liens outstanding against the kiosk. At any rate, the suit between Sinclair and appellee resulted in Sinclair recovering $2,500.00 from appellee. Sinclair's testimony indicates that he disbursed the recovery to others but couldn't remember how or to whom the recovery was disbursed. Appellant knew of the lawsuit, as evidence by the bankruptcy schedule of Michel's Parfumes, which stated that the kiosk was "in legal dispute between O. C. Sinclair and Central Park Mall as to ownership."

The record does not indicate when Michel's Parfumes commenced business nor when the kiosk was completed. However, on February 1, 1971 creditors filed an involuntary bankruptcy petition against Michel's Parfumes. Michel's Parfumes was finally adjudicated a bankrupt, and appellant was appointed receiver for the assets of the bankrupt. On October 19, 1971, appellant was discharged as receiver and appointed trustee. Approximately five months later, on March 24, 1972, appellant mailed a letter to the appellee demanding the amount of the bankrupt's investment in the kiosk and thereafter filed suit alleging that appellee had converted the kiosk.

The appellee's conduct relative to this suit began on February 12, 1971, when appellee mailed a letter to Michel's Parfumes stating that appellee intended to terminate the lease due to nonpayment of rent, pursuant to provisions in the lease. The total amount of back rent and expenses due was $2,060.76. Michel's Parfumes had never paid any rentals. The letter gave Michel's Parfumes five days to cure default. The letter was returned to appellee marked "unclaimed" on March 10, 1971. Meanwhile, on February 18, 1971, either appellee or O. C. Sinclair entered the kiosk, changed the locks, and took possession of the kiosk. Thereafter the lawsuit between Sinclair and appellee commenced resulting in a recovery in favor of Sinclair against appellee for approximately $2,500.00 for work done in the construction of the kiosk. It appears from the record that after appellee paid this amount to Sinclair he took possession of the kiosk, although it also appears that appellee to no avail attempted to find a tenant for area 131 pending the Sinclair lawsuit. Up until the time of this suit, the kiosk was intermittently vacant or leased to other tenants. Appellee's manager testified that they tried to sell the kiosk but that they found no one who was willing to buy it. Appellee's manager testified that the kiosk had a value of $5,000.00, and that this was the figure they had unsuccessfully tried to sell it for.

The lease between appellee and Michel's Parfumes provided that appellee was entitled to terminate the lease upon the happening of any one or more specified events. Two of these events were the adjudication of the tenant as a bankrupt and the failure of tenant to cure default in payment of rent. Paragraph 1 of said lease provided:

"Improvements and fixtures placed on the leased premises by the tenant are to be provided and installed at the tenant's expense; and, the tenant shall have the right to erect on the leased premises a kiosk, at his own expense, in accordance with the plans and specifications attached hereto as Exhibit 'C' and made a part hereof. The tenant shall have the right

to remove said improvements, fixtures, furnishing, kiosk, and other property erected or installed by him at the end of the lease term or any renewal term or extension, provided that all amounts payable to landlord under the terms of this lease and the then-current lease term have been paid."

As mentioned earlier, appellant, in the capacity as trustee of the bankrupt's estate, made a letter demand on March 22, 1972 to appellant seeking the amount of $16,818.60 representing the investment of Michel's Parfumes, the bankrupt, in the kiosk, which kiosk appellant considered an asset of the corporation. The record indicates that appellee offered the kiosk to appellant but that appellant refused it. Of course, by that time, appellee had already effectively terminated the lease and seized possession of the leased premises. However, at trial appellee still offered to return the kiosk to appellant. Appellant took the position at trial that he was entitled to recover the value of the kiosk and accordingly refused tender of the kiosk.

We shall first consider the legal effect of the lack of findings of fact and conclusions of law in the record. The court rendered its judgment holding that appellant was entitled to take nothing against appellee. The judgment contained the following recitation:

> "In the absence of application for trial by jury, the court after presentation of the testimony, evidence, and arguments of counsel, found that the kiosk was not a trade fixture; the fair market value of the kiosk in February of 1971 was $5,000.00; that the presumption of non-forfeiture had been overcome by evidence and the burden of proof reverted then to the Plaintiff; that to sue for money damages instead of the improvements themselves over one year after forfeiture and re-entry on the leasehold would have been inequitable if done by the Lessee and was, therefore, inequitable by the Trustee; that the kiosk became a part of the real estate and title thereto was forfeited on February 18, 1971 upon re-entry

by the landlord; and that the Trustee rejected the leasehold interest and abandoned whatever rights the tenants had therein. Based on such finding the Court is of the opinion that judgment should be rendered in favor of Defendant."

Appellant's first five points of error complain of the alleged "holdings" of the trial court as above recited. Appellee contends in his first counterpoint that no findings of fact and conclusions of law were requested or filed and that therefore the judgment "should be affirmed if it can be upheld on any legal theory that finds support in the evidence"; that the only "holdings" of the court were that appellant take nothing by his suit and that costs be taxed to appellant.

There is presently existing in the law a question as to whether recitations in a judgment have the same force and effect as formal findings of fact and conclusions of law. Rule 306, Tex.R.Civ.P., provides that "The entry of the judgment shall contain the full names of the parties, as stated in the pleadings, for and against whom the judgment is rendered." Before amendment in 1971, Rule 306 provided, following the last word of the present rule, that the judgment also should "carefully recite the findings of the jury, or the several findings, if more than one, upon which judgment is based." This deletion was considered in *Roberson Farm Equip. Co. v. Hill,* 514 S.W.2d 796, 801 (Tex.Civ.App.—Texarkana 1973, writ ref'd n. r. e.), wherein the Court of Civil Appeals held that "Recitals now, except those showing the full name of the parties, etc. and those stating for and against whom judgment is rendered, are not sanctioned by the rule nor given place or function in a judgment."

In *Constance v. Constance,* 544 S.W.2d 659 (Tex.Sup.1976) reversing the Austin Court of Civil Appeals' opinion at 537 S.W.2d 488, the Supreme Court held: "Judgments . . . are to be construed as a whole toward the end of harmonizing and giving effect to all the court has written. . . . Conclusive effect is not to be given the use or not at a particular point in the judgment of the commonly employed

decretal words, and what the court has adjudicated is to be determined from a fair reading of all the provisions of the judgment." *Constance,* supra, dealt with the omission in a divorce decree of an express adjudication of the military retirement benefits of the husband. The wife appealed, and the Court of Civil Appeals held that since the retirement benefits were not adjudicated, that husband and wife held the benefits as tenants in common. The husband appealed to the Supreme Court which affirmed the trial court, holding that "It is clear on the face of the decree in question that the award of $200 per month for child support rested upon the decision of the trial court to award the retirement benefits to the husband." Thus, the issue in *Constance* involved a determination of what the decree awarded, and not the independent significance of any factual recitations in the divorce decree. The Supreme Court held that in determining *what* was adjudicated, all the provisions of the judgment "are to be construed as a whole." Thus, we deem still valid the statement of the Court of Civil Appeals at 537 S.W.2d 488, 490, which was that "insofar as the judgment undertakes to recite findings of fact, such findings are not conclusive," citing 4 McDonald, "Judgments", sec. 17.09.3 (1971) and 33 Tex. Jur.2d "Judgments" sec. 35 (1962).

The Supreme Court's decision in *Constance,* supra, did not affect the holding of *Roberson,* supra, discussed previously. *Roberson* went on to hold at 514 S.W.2d 801 that:

> ". . . Cases may be found in which recitals appear to have been treated as findings of fact or conclusions of law, as contemplated by Tex.R.Civ.P. 296 et seq., but presently there is no warrant in the procedural rules for such treatment. Finding and conclusions serving as a basis for judgment are governed and have application in accordance with Rule 296 and associate rules."

The Houston Court of of Civil Appeals (14th Dist.) held to the contrary in *Davis v. Davis,* 507 S.W.2d 841, 843 (Tex.Civ.App.— Houston [14th Dist.] 1974, rev'd on other grounds, 521 S.W.2d 603), but in doing so relied upon a Dallas Court opinion from 1949 without considering the 1971 amendment to Rule 306.

Findings of fact and conclusions of law at the request of either party are to be stated by the judge separately after rendition of judgment. Tex.R.Civ.P. 296. To allow legally controlling facts to be recited in a judgment with effective and permanent import would also allow Rules 296–299, Tex.R. Civ.P., to be suspended at the whim of the court or counsel for either party. Assuming that the rules did allow findings of fact to be effectively recited in the judgment, how would dissatisfied counsel receive on request additional or amended filings pursuant to his procedural right as provided by Rule 298, Tex.R.Civ.P.?

Rule 299 provides in part that "Where findings of fact are filed by the trial court they shall form the basis of the judgment upon all grounds of recovery and of defense embraced therein. The judgment may not be supported upon appeal by a presumption of finding upon any ground of recovery or defense, no element of which has been found by the trial court; . . . ." This rule places the burden on the party or parties requesting findings or additional findings to request those findings which support or weaken the judgment. If a party omits to request one independent and legally controlling fact element, yet requests others, the judgment cannot be upheld presumptively on the finding omitted. Thus, to allow findings of fact to be recited in the judgment potentially disrupts the rule that in situations where no findings of fact are requested or filed by the trial court the judgment should be affirmed if it can be upheld on *any* legal theory that finds support in the evidence. *Bishop v. Bishop,* 359 S.W.2d 869 (Tex.Sup.1962).

As stated in *Roberson,* supra, there is no support in the rules to warrant findings of fact and conclusions of law to be included in the recitals of the judgment. Aside from this, there is a plethora of potential conflict between Rules 296–299 and a practice of reciting fact findings in the judgment.

Thus we feel obliged to follow the rule laid down in *Roberson, supra.*

As stated earlier where no findings of fact or conclusions of law have been filed or requested, the judgment of the trial court must be affirmed if there is any evidence of probative force to support it upon any theory authorized by law. *Bishop v. Bishop, supra; Rosenthal v. Leaseway of Texas, Inc.,* 544 S.W.2d 180, 183 (Tex.Civ. App.—Tyler 1976, no writ); *John Deere Co. v. Neal,* 544 S.W.2d 514, 517 (Tex.Civ.App. —Texarkana 1976, no writ). The Court of Civil Appeals must presume that the trial court found all necessary facts in favor of the judgment, and the reviewing court is bound by such implied findings if there is any evidence of probative value to support them. *Pruske v. National Bank of Commerce of San Antonio,* 533 S.W.2d 931 (Tex. Civ.App.—San Antonio 1976, no writ); *Texas State Bd. of Medical Examiners v. Haynes,* 388 S.W.2d 258 (Tex.Civ.App.— Tyler 1965, no writ). In so reviewing the evidence, all evidence that is contrary to the presumed findings must be disregarded. *Bowen v. El Paso White Truck Co.,* 434 S.W.2d 931 (Tex.Civ.App.—El Paso 1968, no writ); *Trice Contract Carpets & Furniture, Inc. v. Martin,* 334 S.W.2d 554 (Tex.Civ. App.—Amarillo 1960, no writ).

The sole criteria upon which the court entered a take-nothing judgment against appellant in this suit for conversion could only be that the kiosk became a part of the realty. If the kiosk was a part of the realty, there can be no action for conversion. *Carpenters Local Union v. Texas State Federation of Labor Bldg. Ass'n,* 288 S.W.2d 874 (Tex.Civ.App.—Austin 1956, writ ref'd n. r. e.); 14 Tex.Jur.2d "Conversion" sec. 7 (1960). Accordingly, this court presumes that the trial court found facts which support a holding that the kiosk was a part of the realty at the time of trial.

We have carefully viewed the record and are of the opinion that there is some evidence in support of the implied fact that the kiosk had become a part of the realty. The record indicates that the kiosk was constructed out of "wood and stucco"; that its dimensions were 20 × 26 feet; that it was nailed to the floor of the mall with concrete nails, the nails being driven through 2 × 4 lumber that made up the bottom of the walls of the kiosk and into the concrete floor; that the kiosk was connected to the plumbing network of the mall; that the plumbing came up through the floor and was connected to two lavatories in the kiosk; that there were two dressing rooms in the kiosk; that the kiosk was connected to the electrical network of the mall; that the electrical conduits came up out of the floor of the mall; that the kiosk was a very sturdy building; that it was of sound enough construction to withstand a hurricane or a collapse of the roof of the mall; and that the kiosk would last for fifty years if cared for.

A fixture is broadly defined as something that is personal in nature but so annexed to realty as to become part of the realty. See 25 Tex.Jur.2d "Fixtures" sec. 1 (1961) and cases cited therein. This, of course, does not mean that it must be impossible to remove the fixture, and whether removal is permissible is a question that has been considered by numerous cases.

In the case of *O'Neil v. Quilter,* 111 Tex. 345, 234 S.W. 528 (1921), the Supreme Court of Texas followed a rule laid down in *Hutchins v. Masterson,* 46 Tex. 551, 26 Am. Rep. 286 (1877). The rule is used to determine whether a chattel has become an immovable fixture and consists of the following three-part test quoted from *Ruby v. Cambridge Mutual Fire Insurance Company,* 358 S.W.2d 943 (Tex.Civ.App.—Dallas 1962, no writ) at page 945: "(1) Has there been a real or constructive annexation of the property in question to the realty? (2) Was there a fitness or adaption of the article to the uses or purposes of the realty with which it is connected? (3) Was it the intention of the party making the annexation that the chattel should become a permanent accession to the freehold?" The third criteria, dealing with intention, is the preeminent factor whereas the first and second criteria are "chiefly of value as evi-

dence of this intention." *Capitol Aggregates, Inc. v. Walker*, 448 S.W.2d 830, 834 (Tex.Civ.App.—Austin 1969, writ ref'd n. r. e.); *Millers Mutual Fire Ins. Co. v. Jackson*, 359 S.W.2d 510 (Tex.Civ.App.—Amarillo 1962, no writ).

The question of intention, as well as the general question of whether the property has the status of a fixture, is a question of fact to be determined by the trier of fact. *Goodyear Service Stores v. Clegg*, 361 S.W.2d 445 (Tex.Civ.App.—San Antonio 1962, no writ); *Millers Mutual Fire Ins. Co. v. Jackson*, supra; *Dallas Joint Stock Land Bank of Dallas v. Lancaster*, 100 S.W.2d 1029, 1032 (Tex.Civ.App.—Waco 1936, writ dism'd).

Apparently the trial court found that the appellee as landlord and Michel's Parfumes as tenant intended that the kiosk was to become a part of the realty subject, however, to removal only upon compliance with certain conditions precedent. The lease provided that "The tenant shall have the right to remove said improvements, fixtures, furnishing, kiosk and other property erected or installed by him at the end of the lease term . . . provided that all amounts payable to landlord under the terms of this lease . . . have been paid."

Of course, the general rule is that a lessee retains title to a structure built upon leased premises and has a right of removal. In this respect, the law of fixtures should not apply as long as conditions precedent to the right of removal have been complied with. *Wright v. MacDonell*, 88 Tex. 140, 30 S.W. 907, 909 (1895). A written lease agreement governs the intention of the landlord and tenant in respect to their property rights in fixtures. *Haverfield Co. v. Siegel*, 366 S.W.2d 790 (Tex.Civ. App.—San Antonio 1963, writ ref'd). Furthermore, the general rule that a tenant may remove improvements is subject not only to the law of fixtures concerning damage to the realty caused by removal, but is also subject to contracts to the contrary. *Eckstine v. Webb Walker Jewelry Co.*, 178 S.W.2d 532 (Tex.Civ.App.—Fort Worth

1944, writ ref'd). Here we think the trial court had cause to believe that the intention of the parties as to the right of removal was subject to a condition precedent, that of payment of all rentals due. The trial court was further authorized to believe that the primary benefit to appellee as landlord under the lease agreement was the receipt of rental payments, based upon the testimony of appellee's manager that the kiosk had little value to the mall independent of the ability to rent lease area 131.

Where there is a right of removal, if it is not exercised within a reasonable time, the right is forfeited. What length of period constitutes a reasonable time is a question of fact or a mixed question of law and fact, to be determined according to the circumstances existing in the particular case. *A & M Petroleum Co. v. Friar*, 152 S.W.2d 470, 471 (Tex.Civ.App.—El Paso 1941, no writ); *Clark v. Clark*, 107 S.W.2d 421, 425 (Tex.Civ.App.—Texarkana 1937, no writ).

This court is cognizant of the rule that the law abhors forfeitures. *Eckstine v. Webb Walker Jewelry Co.*, supra. However, there is some evidence in the record that the right of removal was forfeited. It is indeed persuasive that the tenor of appellant's entire case was that appellant did not want the kiosk, but wanted money instead. The court was authorized to believe, based on the evidence in the record, that Michel's Parfumes' right to remove the kiosk was forfeited. Furthermore, the record does not indicate that a demand for removal of the kiosk was ever made.

The record reveals that on February 12, 1971, pursuant to written lease provisions, appellee mailed by certified mail, return receipt requested, a demand for rent in arrears and gave notice that if the back rent was not paid the lease would be terminated. On February 18, 1971, Michel's Parfumes lost possession of the lease premises when the locks were changed. It is unclear in the record who changed the locks and seized possession, but we deem this not material to the disposition of this case, the

point being that Michel's Parfumes was divested of possession on February 18, 1971. At the time the lease was terminated and the lease premises were seized, the kiosk was vacant.

An involuntary petition in bankruptcy was filed against Michel's Parfumes on February 1, 1971. Approximately seven months later Michel's Parfumes was adjudicated a bankrupt. On September 20, 1971, appellant was appointed receiver, and on October 19, 1971, was appointed trustee. It was not until March 22, 1972, some five months later that appellant made demand on appellee for $16,318.60 representing the total investment of Michel's Parfumes in the construction of the kiosk. The record is vague as to the use to which the kiosk was put during this period. It is undisputed that appellee did not remove or sell the kiosk.

Approximately thirteen months passed between the time that Michel's Parfumes' lease was terminated and the locks were changed on the kiosk and the time of appellant's demand for $16,318.60. Although appellant brought suit for said amount or in the alternative for possession of the kiosk, at trial appellant alleged that it was entitled to opt for the value of the kiosk and refuse return of the kiosk, and indicated to the trial court that it did not want the kiosk. The record indicates that appellee offered to return the kiosk. Appellee's counsel asked appellee's property manager if there was any objection to the kiosk being removed by appellant, to which the property manager replied, "No. Be glad for them to have it."

The question presents itself: What was appellee to do with the kiosk during the thirteen months between the time Michel's Parfumes lost possession and the time that appellant made demand for its alleged value? There is nothing in the record to indicate that appellee could do anything other than allow the kiosk to remain on the lease premises, whether it had become a part of the real estate or not. As it turned out, appellee's only alternative for the thirteen month period was to not terminate the lease, thereby building up against the bankrupt estate an amount of back rent of some $6,500.00. Appellant has overlooked this question throughout the entire case, and instead has sought the cost of construction of the kiosk without demanding return of the kiosk.

We feel that equity itself would not allow a recovery in favor of appellant based upon the facts stated.

For the above stated reasons we feel that the judgment of the trial court that appellant take nothing against appellee should be affirmed. In so holding, we overrule appellant's points of error numbers one, three and four and find it unnecessary to consider points of error numbers two, five and six.

Judgment affirmed.