Ex parte J. J. PRUITT, Harris County
Fire Marshal, Relator.

No. B–6591.

Supreme Court of Texas.

May 25, 1977.

Joe Resweber, County Atty., Anthony D. Sheppard and William S. Dubois, Asst. County Attys., Houston, for relator.

David A. Gibson, Tom F. Coleman, Jr., Houston, for respondent.

McGEE, Justice.

This is an original habeas corpus proceeding brought by J. J. Pruitt, Fire Marshal of Harris County, Texas. Pruitt was ordered confined by the district court of Harris County because he failed to produce records of his investigation of a fire and refused to answer questions when ordered by the court. Pruitt filed this writ of habeas corpus asserting that the district court's order of commitment was invalid because the court had no authority to order the production of the investigatory records of the fire. The question presented in this case is what materials are to be made available for public inspection by a county fire marshall pursuant to Texas Revised Civil Statutes article 1606c and the Texas Open Records Act, article 6252–17a.[1]

This action arises from a fire which was investigated by Pruitt and his staff. The structure which was destroyed by the fire was insured by Aetna Casualty and Surety Company. Claims were presented to Aetna by the owners of the house and the owner of a security interest in the house. Aetna refused to pay the claims, alleging that the fire was intentionally set by the owners, thus precluding recovery due to an exception in the policy. The owners sought to depose Pruitt and subpoena all of his files relating to this particular fire in order to show that either the fire was not a result of

---

1. All references are to Texas Revised Civil Statutes Annotated.

arson or that they were not responsible. Pruitt produced a Harris County Alarm and Fire Record of the fire in question. The record contained general information such as a description of the house, its location, the name of the owner, when the alarm was turned in, when the fire was put out and who investigated the fire. The record also contained the following information concerning the cause and location of the fire:

---

Fire Out on Arrival: Yes ☐; No ☒; If No, how extinguished _____ – 1½" hose lines by Fire Departments.

---

Floor of Origin: Ground floor _____ Confined to: Floor Yes ☐; No ☒; Building Yes ☐; No ☒

Extended To: Adjoining Building Yes ☒ No ☐; Beyond Adj. Bldg. Yes ☐ No ☐

Cause of Ignition: Incendiary

<span style="font-size:smaller">If not definitely known state "undetermined"</span>

Material First Ignited: Flammable liquid

Cause of Fire Spread: Flammable liquid

Persons Injured: Firemen _____ Civilians _____; Persons Killed: Firemen _____ Civilians _____

Estimated Value of: Building $150,000.00 _____ Contents $50,000.00

Estimated Loss: Building $150,000.-0 _____ Contents $50,000.00

---

Pruitt has refused to produce any of his investigatory files or answer questions related to his investigation, stating that such disclosure would interfere with an active arson investigation which is still in progress. There is nothing in the record that indicates the investigation by Pruitt is not actively proceeding. Pruitt was held in contempt and ordered confined when he refused to produce all of his records and answer questions concerning his investigation of the fire. Pruitt asserts that the district court had no authority to order the production of his active investigatory files; thus the orders of production and confinement are illegal.

Pruitt claims that the active investigatory files are not discoverable under article 1606c and asserts an executive privilege to preclude discovery of materials which will interfere with his duties as county fire marshal. Article 1606c states in pertinent part:

"County Fire Marshal

"Art. 1606. Counties with over 350,000 inhabitants.

.　　.　　.　　.　　.

"Investigation of fires

"Sec. 2. It shall be the duty of the said County Fire Marshal to investigate the cause, origin and circumstances of every fire occurring within the county, outside of any incorporated city, town or village, by which property has been destroyed or damaged, and he shall especially make investigation as to whether such fire was the result of carelessness or design. Such investigation shall begin within twenty-four hours, not including Sunday, after the County Fire Marshal receives notice or information of any such fire.

"Record of fires

"Sec. 3. *The County Fire Marshal shall keep or cause to be kept in his office a record of all fires occurring within the county, outside of any incorporated city, town or village, together with all facts, statistics and circumstances, including the origin of the fire and the estimated amount of the loss, which may be determined by his investigation.* Such record shall be kept in a legible and permanent form and be so preserved that the same may be at all times accessible and open for inspection.

"Witnesses and evidence; filing of criminal charges; contempt.

"Sec. 4. When in his opinion further investigation is necessary, the County Fire Marshal shall have the power to subpoena witnesses to appear before him and testify as to their knowledge of facts and circumstances surrounding the fire or attempt at setting of the fire; he shall be empowered to administer oaths and affirmations to any person appearing as a

witness before him; he shall take and preserve written statements, affidavits and depositions as he shall deem fit; he shall file in courts of competent jurisdiction any charges of arson, attempt to commit arson, or any other crime or conspiracy to defraud, against any and all persons whom he shall deem guilty; he shall require the production before him of any book, paper or document deemed pertinent to such investigation and shall file misdemeanor charges in courts of competent jurisdiction against any witness who refuses to be sworn, who refuses to appear and testify, or who fails and refuses to produce before him any book, paper or document touching on any matter under examination when called upon by the County Fire Marshal to do so. Any person found guilty of such conduct of contempt of the procedings [sic] held by the County Fire Marshal shall upon conviction be fined not more than Twenty-five ($25.00) Dollars and costs in any court of competent jurisdiction.

"Privacy of examination; service of process.

"Sec. 5. The investigations and examinations may be conducted by said County Fire Marshal in private; all persons may be excluded from being present except the persons under examination; and the witnesses may be kept separate and apart from each other and not allowed to communicate with each other until they shall have been examined. All process shall be served by any Constable or Sheriff and the same shall be signed by the County Fire Marshal in his official capacity.

. . . . .

"Civil rights and actions.

"Sec. 9. *No action taken by the County Fire Marshal shall affect the rights of a policy-holder or any company in respect to a loss by reason of any fire so investigated; nor shall the result of any such investigation be given in evidence upon the trial of any civil action upon such policy*; nor shall any statement made by any insurance company, its officers, agents or adjusters, nor by any policy-holder or anyone representing him, made with reference to the origin, cause or supposed origin or cause of the fire to the Fire Marshal or to anyone acting for him, or under his direction, be admitted in evidence or be made the basis for any civil action for damages."

■ We hold that article 1606c precludes disclosure of the materials sought and order that Pruitt be discharged. This holding is dispositive of the matter presented and we do not reach Pruitt's assertion of an executive privilege.

Section three provides that basic factual information about fires be recorded and kept open for public inspection. The facts, statistics, and circumstances referred to in section three constitute the information contained in the County Alarm and Fire Record. There is nothing in section three to suggest that a fire marshal's active arson files are to be kept for public inspection.

Section four states that if the fire marshal thinks further investigation is necessary to determine whether arson is involved, he may conduct a full and independent arson investigation. The fire marshal is empowered to subpoena witnesses, take and preserve written statements, collect papers or documents pertinent to the investigation, and file charges of arson against parties incriminated by the investigation.

Section five provides that the investigations and examinations of the fire marshal may be kept private. The investigations which may be kept private by section five are those independent investigations of the fire marshal provided for in section four. A full investigation by the fire marshal would include the collection of evidence, taking statements of witnesses and informants and performing tests to determine the exact cause of the fire and who was responsible for setting the fire. The examinations which may be kept private by section five are the examinations of witnesses of informants provided for in section four.

Section nine specifically prohibits the result of any fire marshal's investigation from being admitted into evidence in a civil

trial. Section nine further provides that no action of the county fire marshal shall affect the rights of a policyholder or insurance company regarding the fire.

 Statutes should be read as a whole and construed to give meaning and purpose to every part. *Black v. American Bankers Ins. Co.,* 478 S.W.2d 434 (Tex.1972); *Perkins v. State,* 367 S.W.2d 140 (Tex.1963). It is clear from reading the above sections of article 1606c that county fire marshals are not required to produce or testify about all of the materials contained in their files. Section three provides that general information about fires be made public. Sections four and five, however, provide that the fire marshal may investigate fires and these investigations may be kept private. There would be no reason to provide for private investigations and examinations in section five if the records of these investigations and examinations could be discovered under section three.

The discovery of active arson investigation files under section three would also violate the provision of section nine, that no action of the fire marshal shall affect the rights of a policyholder or insurance company regarding a fire investigated by the fire marshal. Discovery of active arson files could indeed affect the rights of either the insurance company or the insured by implicating certain individuals in committing arson, in providing parties with physical evidence which could be used at trial, in disclosing witnesses who could be called to testify or by coercing a party to settle a dispute. The legislative intent disclosed by reading section nine with sections three, four and five, indicates to us that the active investigatory files of the fire marshal are not to be used for the benefit of either the insurance company or the insured but were to be kept private.

We hold that in active arson files the names and statements of witnesses, suspects, and informants, including undercover officers, must be kept private. The opinions and conclusions of the fire marshal's investigators regarding witnesses, suspects, statements made by persons questioned, and the investigators' opinion as to the motive for an intentionally set fire are to remain undisclosed. Tests performed by the fire investigators to determine how a fire was started, tests used to determine the specific type of materials used in starting a fire, or tests made to determine who was responsible for starting a fire should also remain undisclosed. The type of information that the fire marshal is required to make available for public inspection is that material contained in the County Alarm and Fire Record which has already been produced.

The owners have urged the release of information from the fire marshal to assist them in recovering claims from Aetna. The owners are seeking enough information to contest Aetna's assertion of the arson exclusion by showing that they are not responsible for purposely starting the fire. This argument presents a strong public policy reason for allowing disclosure, but preventing interference with the fire marshal's duties of crime detection and law enforcement is a public policy consideration of equal importance.

Similar policy considerations were discussed when determinations were made concerning whether investigatory materials contained in police files were to be made public under article 6252–17a, the Texas Open Records Act. *Houston Chronicle Publishing Co. v. City of Houston,* 531 S.W.2d 177 (Tex.Civ.App.—Houston [14th Dist.] 1975), *writ ref'd n.r.e. per curiam,* 536 S.W.2d 559 (Tex.1976); *see,* Tex. Att'y Gen. Open Record Decision No. H–127 (1976). Section 3(a)(8) of the Act provides that "records of law enforcement agencies that deal with the detection and investigation of crime and the internal records and notations of such law enforcement agencies which are maintained for internal use in matters relating to law enforcement" are excluded from public access. In the *Houston Chronicle* case the court of civil appeals held that the public has the right of access to the basic information concerning a crime, such as the offense committed, the location of the crime, the identification of the com-

plainant, the premises involved, the time of the occurrence, the property involved, vehicles involved, a detailed description of the offense in question and the names of investigating officers. Access was denied to materials containing tests made by the police department, the names of witnesses and informants, observations and opinions of the arresting officers, and the personal record and arrest history of the arrested person. This court refused the application for writ of error, no reversible error, agreeing with the court of civil appeals that neither the Texas Open Records Act nor the United States or Texas Constitutions required disclosure of the complete records. We reserved the question of whether the press and public have a right to the information which the court of civil appeals held to be public because the City of Houston failed to file an application for writ of error. 536 S.W.2d at 561. This court recognized in *Houston Chronicle* that while strong considerations exist for allowing access to investigatory materials, the better policy reason is to deny access to the materials if it will unduly interfere with law enforcement and crime prevention.

We conclude that the legislature in enacting article 1606c intended to allow public access to the material contained in the County Alarm and Fire Record but did not intend to allow access to active investigatory records of the county fire marshal. We also think the overriding public policy consideration is to preclude interference with the county fire marshal in the performance of his law enforcement duties.

The district court was without authority to order discovery of all of Pruitt's records pertaining to the fire in question. Pruitt was justified in his refusal to produce his investigatory files and in refusing to testify to their contents. The order of commitment based on Pruitt's failure to produce the records is invalid and we order Pruitt discharged.

YARBROUGH, J., notes his dissent.