**CITY OF HOUSTON, et al., Appellants,**

v.

**HOUSTON CHRONICLE PUBLISHING COMPANY, Appellee.**

No. 01–83–0163–CV.

Court of Appeals of Texas, Houston (1st Dist.).

May 24, 1984.

James C. Faulkner, II, Asst. City Atty., F.J. Coleman, Jr., City Atty., Houston, for appellants.

W. Robert Brown, Liddell, Sapp, Zively, Brown & Laboon, David Crump, Professor of Law, South Texas College of Law, Houston, for appellee.

Before TOM COLEMAN, Retired C.J., EVANS, C.J., and WARREN, JJ.

## OPINION

TOM COLEMAN, Retired Chief Justice.

Upon application of the Houston Chronicle Publishing Company, the trial court granted a writ of mandamus compelling production of certain police department records under the Open Records Act, art. 6252–17a et seq., Tex.Rev.Civ.Stat.Ann. The trial court's order compelled the City of Houston Police Chief Lee P. Brown and Mayor Kathryn J. Whitmire to produce the original and all numbered copies of the Houston police blotter and the show-up sheets for all dates since June 1, 1982. In this appeal from that order, the City contends that the writ of mandamus was prematurely and improperly granted, and that the findings of the trial court, as recited in its judgment, are unsupported by the evidence.

There has been a previous confrontation between the City and the Chronicle over access to police records. *See Houston Chronicle Pub. Co. v. City of Houston,* 531 S.W.2d 177 (Tex.Civ.App.—Houston [14th Dist.] 1975, writ ref'd n.r.e.), 536 S.W.2d 559 (Tex.1976) (*"Chronicle I"*) and Tex.Att'y.Gen. ORD–333 (1982). This particular dispute began when a Chronicle reporter asked the Houston Police Department for information that he desired for his investigation of the operation of the City jail. Although reporters normally had been given access to police records containing the requested information, the City de-

nied the reporter's request. On January 5, 1983, the Chronicle reporter delivered a letter to the Mayor's office asking that she order the Houston Police Department to comply with the Open Records Act and with *Chronicle I* and direct that he be given access to the following information:

The names of all prisoners booked into the Houston City Jail since June 1, 1982; their ages; their addresses; charges filed, if any; the dates they were in the City Jail.

On January 7, 1983, the request was resubmitted in writing to the Chief of the Houston Police Department as follows:

The Chronicle hereby requests access to the following information maintained by the Houston Police Department: (1) the "Houston Police Blotter" for all dates since June 1, 1982; (2) the "Show-up Sheet" for all dates since June 1, 1982; (3) the "Arrest Sheet" * for all dates since June 1, 1982.

The following information should be contained in the records requested: (a) the names of all prisoners booked into the Houston City Jail since June 1, 1982; (b) their ages; (c) their addresses; (d) charges filed, if any; and (e) the dates these persons were in the City Jail.

Both the City and the Chronicle recognize that the matters at issue are governed by the Open Records Act, Tex.Rev.Civ.Stat. Ann. art. 6252–17a (Vernon Supp.1982). Section 3 of that Act provides that public information maintained by governmental bodies shall be made available to the public during normal business hours. Section 4 provides that upon application for such information, "the custodian shall promptly produce such information for inspection or duplication, or both." If the information is not immediately available, "the custodian shall certify this fact in writing to the applicant and set a date and hour within a reasonable time when the record will be available." Section 5(b) prohibits the custodian from making any inquiry of an applicant beyond "establishing proper identification and the public records being request-

ed," and requires the custodian to extend "all reasonable comfort and facility for the full exercise of the right granted by this Act."

The City concedes that the *items of information* requested by the Chronicle were, and remain, public. It contends that the request was for the complete *records* in which the information could be found. There is no evidence that the City followed any of the above-described legislative directives on processing requests for public information. Therefore, the City failed to comply with the statute.

The City first argues that the trial court should have granted its plea in abatement because the cause of action was prematurely filed. The City contends that sec. 7 of the Open Records Act allowed it to seek a decision from the Attorney General as to whether the information requested by the Chronicle was subject to any applicable exceptions to disclosure under the Act, and that sec. 8 required that the mandamus action be abated until they had received the decision of the Attorney General.

 As we read section 7, it provides that the City may request a decision from the Attorney General only if (1) the City considers the information to be within one of the statutory exceptions to disclosure, and (2) there has been no previous determination as to the status of the information. The City was not entitled to withhold the requested information pending an Attorney General opinion in this case because the *information* requested had already been determined to be public by the 1975 decision of the Fourteenth Court of Civil Appeals in *Chronicle I.* Moreover, in 1976, the Attorney General issued an opinion specifically setting out the items determined by *Chronicle I* to be public information, and those items included the information requested in this case. Tex.Att'y.Gen. ORD–127 (1976). The Houston Police Department's own General Order No. 100–3, dated February 1, 1979, expressly authorized Houston police officers to release these

---

* It was stipulated at trial that "Arrest Sheet" is the equivalent of the "Show-up Sheet."

same items of information. The Chronicle, therefore, was not required to await yet another pronouncement from the Attorney General before seeking to compel disclosure of the requested information.

■ The City next argues that the Chronicle's suit should have been abated because the City had not refused the Chronicle's request. The remedy of mandamus authorized in section 8 of the Open Records Act is predicated on a refusal to supply the requested information. The City points out that in January 17, 1983, ten days after receipt of the Chronicle's written request, the Mayor wrote the Chronicle, stating:

> I am hereby granting to you, effective immediately, access to such records, subject to the conditions ... [that] personnel of the Houston Police Department have first had an opportunity to review each such record or document, on a case-by-case basis, in order to selectively edit out that information which is excepted from disclosure.

The City contends that this offer on the part of the Mayor indicates a good faith effort on the part of the City to accommodate the Chronicle's request while still protecting the privacy of the individuals arrested, and ensuring compliance with state and federal confidentiality requirements.

Although the City's argument is superficially persuasive, we discern two basic flaws. First, despite the letter's recital of an immediate "grant" of access, it does not state when actual access will be permitted. Even at the time of trial the City was unable to estimate how long it would take for each record to be edited on a case-by-case basis. Therefore, the City's offer falls short of the spirit and intent of the Open Records Act section 4 requirement, "if public information is ... not available ..., the custodian shall certify this fact in writing ... and set a date and hour within a reasonable time when the record will be available."

Second, the City's reservation of the right to review and edit was reasonable only if the requested information was available only from records that also contained non-disclosable information.

The record reflects that the City did not comply with the Chronicle's request, that it did not make a reasonable offer to comply, and that it did not certify to the Chronicle a definite time when it would comply. Accordingly, we hold that the City failed to comply with the provisions of the Open Records Act and that its conduct constitutes a refusal to supply public information under section 8 of the Act. Thus, the trial court did not err in denying the City's plea in abatement.

■ The City next contends that even if the action was not brought prematurely, it was brought in the wrong forum. Arguing that the subject matter of this case is identical to that litigated in *Chronicle I*, the City asserts that original jurisdiction of these matters continues to lie with the trial and appellate courts of *Chronicle I*.

*Chronicle I* was rendered in a declaratory judgment action and did not directly order the City to furnish information to the Chronicle or to make its records available for inspection. The present action is one for mandamus, seeking specific relief which is authorized by sec. 8 of the Open Records Act. The court in which the action was filed has original jurisdiction in mandamus actions. Tex. Const. art. 5, sec. 8. This is not an action to enforce a previous judgment, although the Chronicle contends that the right to the relief it seeks was established by the former judgment. While a court may enforce its own judgments when the circumstances demand, an independent action or proceeding for enforcement may be brought. 34 Tex.Jur.2d, Judgments, sec. 625. Neither the 151st Judicial District Court of Harris County, nor the Court of Civil Appeals for the Fourteenth District (now the Court of Appeals) has exclusive jurisdiction over this action to compel the City of Houston to make its public records available for inspection and copying. The trial court was not required to dismiss or abate this action.

■ A writ of mandamus was proper if the City had a legal duty to perform a nondiscretionary act, and refused performance when a demand was made. *Stoner v. Massey,* 586 S.W.2d 843, 846 (Tex.1979). The City concedes that a demand was made, and we have ruled that performance was refused. Therefore, the issue now before this court is whether the City had a legal duty to comply with the Chronicle's request.

The City said that the requested records contain information which is excepted from disclosure by paragraphs 1 or 8 of section 3(a) of the Open Records Act. The no. 1 copy of the Houston police blotter is filled out when a prisoner is booked with information which is disclosable under the Open Records Act as construed by *Chronicle I.* This disclosable information is also recorded, by multiple carbons, onto copies 2 through 7 of the multi-part blotter card. Only the first two lines of the original entry, which records information identifying the prisoner, are transmitted to copies 8 through 10 of the blotter card. Copies 8 through 10 are not at issue here. They are used to inventory the prisoner's personal property and are entitled "Prisoner Property Receipt." Copies 1 through 7 are all entitled "Houston Police Blotter." Printed in the lower left corner are the copy number and the department to which that copy is routinely routed. The no. 2 copy is apparently forwarded to the municipal court after the prisoner is booked, but six versions of the Houston Police Blotter containing the booking information, with space for recording the disposition of the prisoner, are available to the Houston Police Department.

Subsequent processing of five of the six copies of the blotter card uses only the blanks already printed on the card to record information. The no. 1 copy, however, is transmitted to the Identification Division after booking. The Identification Division checks to see if the arrestee has a local record. If he does, the no. 1 copy is added to his file to update his arrest record with no substantial alteration. If the arrestee does not have a local record, the Identification Division uses a rubber stamp to provide space on the reverse side of the no. 1 copy for additional information which must be obtained from the prisoner to open that prisoner's local record. This form is filled out with the prisoner's fingerprint classification, distinctive scars, tattoos or other marks, height, weight, color of hair, skin and eyes, place of birth, place of employment, and who to contact in case of emergency.

*Chronicle I* held that the Houston Police Department's History and Arrest Records were records dealing with the detection and investigation of crime which came within the Open Records Act sec. 3(a)(8) exception to disclosure. *Chronicle I* described the information contained in the Personal History Arrest Record as follows:

> Various identifying numbers, name, race, sex, aliases, place and date of birth, and physical description, with particular emphasis on scars and tattos. Other personal information included relates to occupation, marital status, and relatives. A mug shot, palm prints, fingerprints, and similar information are included, along with the signature of the arrested party.

The processed no. 1 copies of the blotter card and the information recorded on them more closely resemble the personal history and arrest record found to be non-disclosable in *Chronicle I,* than the Houston Police Blotter described in that decision and held to be a public record.

■ The City maintained throughout trial that these copies of the blotter card contained nondisclosable, confidential information, and that the Chronicle should not be given access to such records unless the confidential information had first been removed or covered over. The City additionally pointed out it would be burdensome to cull out from every individual's arrest file the no. 1 copies for all arrests between June 1, 1982 and the time of trial. We agree with the City that the copies which were processed by the Identification Division and included in the individual's arrest

record file were not subject to disclosure under sec. 3(a)(8) of the Open Records Act.

The record indicates that the copies of the blotter card kept by the investigating division for the offense with which the arrestee is charged (nos. 4 and/or no. 6) are the versions of the blotter card customarily made available to the media. However, the identical information is also contained in copies 3, 5, and 7. The blanks on the blotter card form, concerning when the prisoner was released, by whom, and to whom, are filled in on copies 3, 5, and 7. Copy no. 7 is then filed in the Jail Division's inactive file by booking number, creating a complete record of prisoners in chronological order according to the time the prisoner was booked. Copy no. 5 is forwarded to the Identification Division when the prisoner is released so that the Identification Division can update the individual's arrest record with disposition information. A witness testified he believed that this copy is then discarded. Copy no. 3 goes to the Records Division, where information which must be maintained for the Uniform Crime Report is compiled.

The record thus indicates that copies 3, 4, 5, 6, and 7 are all administrative copies of the blotter card which are not processed with nondisclosable investigative information, and which contain information found by *Chronicle I* to be public. The Public Records Act gives the City some discretion over how to make this information available to the public but not over whether the public should have access.

■ In its letter to the Attorney General, the City questioned the validity of the holding in *Chronicle I* in light of the Supreme Court's comments in its denial of writ, no reversible error, *Houston Chronicle Pub. Co. v. City of Houston,* 536 S.W.2d 559 (Tex.1976). However, the City did not appeal that decision, and it is therefore bound by that holding, and, on proof of the issues determined, would be collaterally estopped from relitigating them. *Griffin v. Holiday Inns of America,* 496 S.W.2d 535, 538 (Tex.1973). However, since the Chronicle failed to introduce the

pleadings and the judgment rendered by the trial court or the judgment of the appellate court in *Chronicle I,* neither the doctrine of res judicata nor estoppel by judgment is applicable in this mandamus action. *Permian Oil Co. v. Smith,* 129 Tex. 413, 107 S.W.2d 564 (1937); *State of Oklahoma v. State of Texas,* 256 U.S. 70, 41 S.Ct. 420, 65 L.Ed. 831 (1921); *Kveton v. Farmers Royalty Holding Co.,* 149 S.W.2d 998 (Tex. Civ.App.—Galveston 1941, no writ); *Wilhite v. Adams,* 640 S.W.2d 875 (Tex.1982).

■ There was testimony that the Houston Police Department now has a policy limiting the public's access to blotter cards to a 24-hour period from booking. This internal policy of the Houston Police Department does not conform to the law as enacted by the state legislature and as construed by the state courts.

The City contends that its policy of withholding records of arrests after twenty-four hours is justified on the basis that after this length of time this information is, or may be, criminal history arrest information, and that the disclosure of such information is prohibited by federal regulations, as well as the Texas Open Records Act.

The question of the type of information which is subject to disclosure by reason of the Open Records Act was determined in *Chronicle I.* The passage of time will not change the type of information which must be disclosed.

The federal regulations create an exception for the kind of information at issue here. 18 C.F.R. sec. 20.20(b) (1982) provides:

> The regulations in this subpart shall not apply to criminal history record information contained in ... (2) original records of entry such as police blotters ... compiled chronologically and required by law or long standing custom to be made public, if such records are organized on a chronological basis.

The evidence in this case establishes that information obtained at the time a person is arrested and "booked" is recorded on the blotter and is information which was held

to be public information in *Chronicle I.* The evidence establishes that the City maintains records which have no other information added and are organized chronologically, that is, by year.

The Attorney General of Texas in Open Records Decision No. 339 (1982) had advised law enforcement officials that disclosure of information which might "unduly interfere with law enforcement," such as the disclosure of names of persons arrested as the result of undercover narcotics work, where other persons involved had not been arrested, or which might conflict with a right of privacy such as the name of the victim of a serious sexual assault, is not required, since such information is within the exception to required disclosure found in sec. 3(a)(8).

■ While the opinions of the Attorney General construing the Open Records Act are not binding upon the courts, they should be given great weight. This rule is particularly applicable here, since the legislature has required that he, on proper request, render "decisions" determining whether requested information is a "public record or within one of the above stated exceptions." Art. 6252–17a, sec. 7(b), V.A.C.S. *Smith v. McCoy,* 533 S.W.2d 457 (Tex.Civ.App.—Dallas 1976, writ dism'd). In sec. 8 of the Act permission is granted a person to seek a mandamus requiring a governmental body to make available for public inspection "information" which the Attorney General has determined to be a "public record."

In answer to a letter submitted by Mayor Whitmire requesting a decision as to whether the information sought by the Chronicle came within the exceptions to disclosure in the Open Records Act, the Attorney General stated that nothing in the federal regulations prohibits the disclosure of the requested records and that the Texas Open Records Act compels their disclosure. The opinion concluded:

... [E]xcept in the circumstances noted, it is therefore our decision that the names of all persons booked into the Houston City Jail since June, 1982, their ages and addresses, the charges filed against them, if any, and the dates such persons were held in jail constitute public information and should be disclosed.

Tex.Atty.Gen. ORD–366 (1983).

The "circumstances noted" referred to in the above quotation refers to information which would unduly interfere with law enforcement or crime prevention [see *Ex parte Pruitt,* 551 S.W.2d 706, 710 (Tex. 1977)], or conflict with an individual's constitutional or common law right of privacy [see *Industrial Foundation of the South v. Texas Industrial Accident Board,* 540 S.W.2d 668, 685 (Tex.1976)].

A facile reading of the Open Records Act and the opinions of the courts and the Attorney General might lead one to conclude that the terms "public" records and "public information" are interchangeable. However, sec. 2(2) of the Open Records Act defines the term "public records" as meaning the "portion of all documents, writings, letters, memoranda, or other written, printed, typed, copied, or developed materials which contains public information." Sec. 3(a) then states that

"all information ... maintained by governmental bodies ... in connection with the transaction of official business is public information ... with the following exceptions only:

(1) information deemed confidential by law, either Constitutional, statutory, or by judicial decision,

\* \* \* \* \* \*

(3) information relating to litigation of a criminal or civil nature ..., to which the state or political subdivision is, or may be, a party ... that ... the respective attorneys of the various political subdivisions has determined should be withheld from public inspection;

\* \* \* \* \* \*

(8) Records of law enforcement agencies that deal with the detection and investigation of crime and the internal records and notations of such law enforcement agencies which are main-

tained for internal use in matter relating to law enforcement."

Section 4 of the Act requires that on "application for public information" the custodian shall "promptly" produce such "information" for inspection or duplication.

The Act clearly provides that those portions of the records kept by the public officials containing material which is not public information are not "public records," and that information excepted from disclosure by the Act is not "public information."

The decision in *Chronicle I* determined the kind of information in the Houston Police Records, which is "public information." All of the information originally recorded on the police blotter with which *Chronicle I* was concerned is public information.

Later other information, such as finger prints, is entered on the number one copy of the police blotter. This is not "public information" as defined in the Act and that part of the police blotter containing this information is not a "public record" as defined in the Act.

The Act authorizes the custodian of records for the Houston Police Department to withhold from public inspection the portions of its records which fall within the exceptions to disclosure provided therein and requires that the custodian seek an Attorney General's decision as to whether requested information can be withheld. The Act requires that public information and public records be produced "promptly."

The custodian of records is authorized to inspect requested records and to eliminate from them information which has been found to be within the exceptions to disclosure by a decision of the Attorney General or a court.

In addition the Supreme Court of Texas, in *Industrial Foundation of the South v. Texas Industrial Accident Board,* 540 S.W.2d 668, 678 (1976), held that a governmental unit has standing to assert that its records are protected by a constitutional right of privacy. In this connection the court stated:

... The governmental unit may request an Attorney General's opinion to determine whether requested information is excepted by Section 3(a)(1), thus effectively raising the constitutional issue. Certainly the agency is not foreclosed, as defendant in a suit to force disclosure, from challenging the Attorney General's conclusion that information is not excluded by the first exception. Furthermore, under Section 10(b), one who discloses information deemed confidential may be subject to fine or imprisonment.

\* \* \* \* \* \*

In reviewing the information which defendants assert is exempt from disclosure, the trial court should follow the same procedure which the Act dictates for submitting claimed exceptions to the Attorney General ... Similarly the claims containing allegedly private information should be supplied to the trial court for an *in camera* inspection and determination whether and to what extent information *should be deleted* from those files. (Emphasis added.)

Where a request is made for particular *records,* the custodian has the duty to examine the records in an effort to determine whether confidential information, as defined by the courts, is present. Where particular *information* is requested, the custodian must determine whether the records in which it can be found are public records or only partially so. Where the custodian thinks that information is not public, and there has been no previous applicable decision it must be submitted to the Attorney General for a decision or it will be presumed to be public information. The custodian is not authorized to withhold information merely because he considers it to be exempt from disclosure. That part of the requested record which contains public information must be disclosed immediately.

The trial court was not asked to authorize the deletion of information from any particular file by reason of its confidential nature. There was no request for a delay to afford the City an opportunity to review its records so that particular files deemed

to contain confidential information could be brought to the attention of the court.

 The records submitted in connection with the Mayor's request for an Attorney General's opinion, as required by paragraph 7(b) of Tex.Rev.Civ.Stat.Ann. art. 6252–17a, did not present a question of the constitutional right of privacy. Since a proper request for a decision as to specific records claimed to be sheltered by a constitutional right of privacy was not presented to the Attorney General within ten days after the Mayor received the request, the information requested is presumed to be public information. Sec. 7(a), *supra.* The City did not present evidence establishing a constitutional privilege with respect to any specific record. This burden rested on the City.

Finally, the City intimates that if the public were given access to public records, it might obtain records of arrests that had been expunged, or records that are incomplete or inaccurate. These are administrative problems which must be addressed by the Houston Police Department regardless of whether the records are used internally or are disclosed to the public. As custodian, the City can take steps to safeguard the accuracy and currentness of its records, and it does not have to await a request for access to public records to review their contents for inaccuracies or indiscretions.

The public policy set out in section 1 of the Open Records Act, as well as the express provisions of the Act, require the City to disclose or make available all public information in its possession upon request. The fact that the request may conceivably reach nondisclosable information does not relieve the City of its duty to offer prompt access to as much of the requested information as is public. The City has not explained its denial of access to the show-up sheets requested by the Chronicle, and we assume that such records are disclosable public records as held in *Chronicle I.*

Appellants have assigned as error the findings of fact and conclusions of law recited in the judgment. We consider only findings 4 and 5 to be findings of fact. These findings are supported by credible evidence and are not so contrary to the great weight and preponderance of evidence as to be clearly wrong. The other numbered findings we consider to be conclusions of law not binding on this court.

 While there is authority to the contrary, we consider that recitations of fact contained in a judgment cannot be substituted for separately filed findings of fact and conclusions of law, and that such findings do not afford a basis upon which the appellant may attack the trial court's judgment. *Chapman v. Sneed,* 17 Tex. 428 (1876); *Gonzalez v. Cavazos,* 601 S.W.2d 202 (Tex.Civ.App.—Corpus Christi 1980, no writ); *Fenlon v. Jaffee,* 553 S.W.2d 422, 427 (Tex.Civ.App.—Tyler 1977, writ ref'd n.r.e.); *Roberson Farm Equipment Company v. Hill,* 514 S.W.2d 796, 801 (Tex.Civ. App.—Texarkana 1974, writ ref'd n.r.e.).

 In a mandamus proceeding the burden is upon the party seeking relief to negate by affirmative allegation and proof every fact or condition which would have authorized the public official to refuse to take the action sought to be enforced upon him. *Smith v. McCoy,* 533 S.W.2d 457 (Tex.Civ.App.—Dallas 1976, writ dism'd).

The Chronicle has sustained this burden since we construe its demand letter to request production of the information listed that is found in the public records named. The trial court erred in requiring the production of the no. 1 copy of the police blotter.

The judgment of the trial court is modified to exclude the no. 1 copy of the Houston Police Blotter which becomes part of an individual's personal history and arrest record. With this modification the judgment is affirmed.

EVANS, C.J., concurring.

EVANS, Chief Justice, concurring.

I concur in the judgment of the majority, but I would affirm the order of mandamus, as modified by the majority decision, solely

on the ground that the City refused to supply information which was clearly public under the Open Records Act and *Chronicle I.*

I disagree with the majority view that the Mayor's letter requesting an Attorney General's opinion was not a "proper" request within the meaning of sec. 7(a) of Tex.Rev.Civ.Ann. art. 6252–17a (The Open Records Act), and therefore that the requested information is presumed to be public under that statute. However, this difference of opinion is not of great consequence since, in my opinion, the undisputed evidence compels the conclusion that the City was not entitled to request an Open Records decision, regardless of the interpretation given its request.

As the majority opinion correctly states, the City was entitled to request an Open Records decision if it met two prerequisites: (1) if it considered the requested information to be excepted from disclosure by sec. 3 of the Act; and (2) if there was no prior determination that such information fell within one of the exceptions of sec. 3.

In my opinion, the City failed to establish the first prerequisite because the plain language of the Chronicle's letter requesting access to such information covered only that specific information which the City knew and now concedes to be public. The City failed to meet the second prerequisite because the prior decision in *Chronicle I* has finally determined that the requested information was not excepted from disclosure.

In this respect, I also disagree with the conclusion of the majority that the Chronicle waived the issue of res judicata because it did not introduce the actual pleadings and judgment from *Chronicle I.* In my opinion, the decision in *Chronicle I* must be given conclusive effect here because the published opinion in that case clearly shows the involvement of identical parties and the disposition of identical issues. The authorities cited in the majority opinion stand for the general proposition that the doctrine of res judicata does not apply unless the judgment in the prior litigation involved and

determined issues identical to those being litigated; however, these authorities, as I read them, do not say that in *every* case the party relying on the doctrine must actually introduce into evidence the judgment entered in the prior case. In the present case, the City conceded that it was bound by the decision in *Chronicle I* and that the decision in that case declared that the information contained on the "clean" version of its police blotter was public information. In my opinion, the introduction into evidence of the appellate court's judgment in *Chronicle I* would have been a needless formality and that act was not a prerequisite to the application of the doctrine of res judicata.

The City seems to argue that the prior adjudication in *Chronicle I* should no longer be considered binding because of changed circumstances in its procedural handling of the requested information. All of the City's reasons for refusing the Chronicle's request relate to information contained in the "processed" copy of the Houston Police Blotter. Both at trial and on appeal, the City attempted to justify its denial of access by arguing that the records containing the requested information had to be screened internally so that nondisclosable information, commingled on the same record with public information, could be withheld. It was the City's position that the transformation of the "clean" copy of the blotter card, into the "processed" document to be included in an individual's Personal History and Arrest Record, caused the Chronicle's request for the "police blotter" to reach nondisclosable information.

The Chronicle's request did not demand the processed copy of the blotter. Rather, the City voluntarily injected this processed version into the suit, despite the fact that its jail and investigation divisions kept clean versions and that it customarily made such clean versions available to the media.

The Chronicle's specific request was for: access to the following information maintained by the Houston Police Department:

(1) The "Houston Police Blotter" for all dates since June 1, 1982;

\* \* \* \* \* \*

The following information should be contained in the records requested:

(a) The names of all prisoners booked into the Houston City Jail since June 1, 1982;

(b) their ages;

(c) their addresses;

(d) charges filed, if any; and

(e) the dates these persons were in the City Jail.

It is undisputed that the items of information listed in this request are public information, held by *Chronicle I not* to fall within any exception to disclosure. Under the plain meaning of this request, the Chronicle was asking for disclosure of public information, obtainable from any of the clean versions of the blotter. The City therefore was required by sec. 4 of the Open Records Act promptly to make this information available to any person asking to see it.

The Open Records Act entitles citizens to information and to access to the records containing that information. Nowhere does the Act require a custodian to produce all duplicate versions of that information, as the City implied at trial. The Chronicle's request clearly distinguishes the information desired from the records believed to contain that information. As custodian of the records in question, the City is in the best position to decide how to make requested public information available, but its discretion is limited, by the Open Records Act, to deciding how best to comply with the request, not whether to comply.

In my opinion, the City was not entitled to refuse the requested information, nor to delay disclosure by applying to the Attorney General for a sec. 7(a) opinion. The City's duty was simply to find a way to make the information promptly and conveniently available to the citizen requesting it.