

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-20-00027-CV

**CELTIC INSURANCE COMPANY**, Superior Healthplan, Inc., and Cenpatico d/b/a Integrated Mental Health Services,
Appellants

v.

Rochelle **CARDONA**,
Appellee

From the 166th Judicial District Court, Bexar County, Texas
Trial Court No. 2019-CI-11194
Honorable Mary Lou Alvarez, Judge Presiding

Opinion by:    Rebeca C. Martinez, Justice

Sitting:    Rebeca C. Martinez, Justice
Beth Watkins, Justice
Liza A. Rodriguez, Justice

Delivered and Filed: September 16, 2020

AFFIRMED

In this interlocutory appeal, Celtic Insurance Company, Superior Healthplan, Inc., and Cenpatico d/b/a Integrated Mental Health Services (collectively, "Appellants") filed a partial motion to dismiss Appellee's claims for breach of contract, breach of the duty of good faith and fair dealing, negligence, and wrongful death for failure to timely file an expert report pursuant to chapter 88 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 88.002(k). The trial court denied the motion to dismiss and Appellants appealed. We affirm.

BACKGROUND

In January 2017, Appellee purchased a health insurance policy from Celtic Insurance Company for her son, Steven Cardona, who was suffering from substance abuse disorder. Superior Healthplan, Inc. and Cenpatico d/b/a Integrated Mental Health Services provided administrative support for the policy. The effective date of the policy was February 1, 2017.

Appellee alleges that prior to purchasing the policy, she researched the policy's benefits and services to ensure it provided assistance with substance abuse, in-patient treatment for those battling addiction, and had an adequate number of providers offering in-patient treatment in the San Antonio, Texas area. According to the policy's advertised "summary of benefits," the policy covered in-patient treatment, but prior approval was required. Further, the summary stated there was no time limitation on an insured's length of stay at an in-patient treatment facility. Appellee alleges Appellants' website listed nine "in-network" providers in the San Antonio, Texas area that offered in-patient treatment to its insureds. Based on her research, Appellee believed the policy would meet Steven's needs.

According to Appellee, the policy she purchased from Appellants stated, "We will provide benefits to you, the enrollee, for covered Healthcare Services as outlined in this contract." The policy further represented, "Covered services for mental health and substance use disorder are included on a non-discriminatory basis for all enrollees for the diagnosis and treatment of mental, emotional, and substance use disorders . . . ." The policy listed in-patient treatment as a covered service. The policy stated, "Expenses for these services are covered, if medically necessary and may be subject to prior authorization." The policy terms provided no time limitation on an insured's length of stay at an in-patient treatment facility. Under the "Mental Health and Substance Use Disorder Services," the policy states, "If you need help, you will be able to get it." According

to Appellee, "this representation would turn out to be false for [Appellee] and [Steven]," which ultimately resulted in Steven's death.

In February 2017, Steven relapsed. According to Appellee, she called the "in network" providers advertised on Appellants' website that could provide in-patient treatment to Steven in the vicinity of San Antonio, Texas. After contacting the facilities, Appellee learned that none of these facilities were covered under Steven's plan and that none could provide the in-patient treatment sought by Appellee. According to Appellee, "it would turn into a constant battle to find the proper services for Steven under his policy."

Appellee alleges that every time she called to inquire about finding treatment for Steven, Appellants would require permission from Steven prior to speaking with her on the phone and, even if she received permission from Steven, Steven's permission lasted only twenty-four hours. According to Appellee, this significantly delayed finding Steven treatment because it was difficult to find and communicate with Steven on a daily basis since he had relapsed. Appellants provided Appellee the opportunity to mail in an authorization form, but it took weeks for the form to process in Appellants' systems, "which only caused more delay and frustration."

Appellee alleges that Appellants were struggling to find facilities that could provide in-patient treatment to Steven. Appellee claims she was verbally told by Appellants that Steven's insurance policy only provided for thirty days of in-patient treatment. According to Appellee, the insurance policy's stated terms provide no such time limitation.

Appellee claims she continued to try to find a facility for Steven, even if it was for only thirty days of in-patient treatment. However, according to Appellee, Appellants "were less than helpful in trying to find the right provider for her son, even when [she] begged for their help." Appellants allegedly suggested a treatment facility in Dallas, Texas. Appellee alleges she was shocked Appellants thought Dallas, Texas was a viable option given that it was "less than desirable

for an addict to be in a new city without his support system." Appellee contends this showed Appellants' "limited ability, experience and knowledge of how to handle insureds struggling with drug addiction."

Appellee claims that Appellants approved Steven for a "short stay" at Laurel Ridge in San Antonio, Texas. Appellee alleges neither "she nor her son ever received anything in writing from [Appellants] as to why the approval was for a short period of time." According to Appellee, "[d]uring the times when Steven was struggling with his addiction and could not find the appropriate services, he would check himself into Laurel Ridge for the short stays, . . . which was the only assistance [Appellants] would provide."

Appellee alleges that Laurel Ridge recommended the "IHRP Program" in San Antonio, Texas but that Appellants "would not be accepted at that facility." Laurel Ridge also recommended "NOVA," another long-term treatment facility. Appellee claims she "begged for an agreement to be worked out between [Appellants] and NOVA," but an agreement could not be reached. Appellee alleges she found another facility called the "Right Step" in Wimberley, Texas, and, according to Appellee, she waited on Appellants to work something out with this facility. Appellee alleges that she and her son "lived in a constant state of limbo, trying to wait until a viable option for the services he needed would open up."

In March 2017, Steven was admitted at Right Step. However, after only seventeen days of treatment, Appellee alleges that Steven was told that Appellants were no longer covering his stay and he was forced to leave the facility. Appellee claims that Steven was admitted back into Laurel Ridge for a "short stay." According to Appellee, Steven "was placed in a series of chaotic, unpredictable, and unstable situations in regard to the care he needed." "Instead of being able to get the services needed, . . . which [were] so vehemently advertised by [Appellants]," Appellee alleges, she was forced to find other programs for Steven.

Appellee claims she found a sober living house in Austin, Texas for Steven, but that she was forced to pay out of pocket for the facility. In June 2017, Steven relapsed and was forced out of the sober living house. Appellee alleges she "again tried to find the services needed for her son, but [Appellants] only purported to cover short stays in Laurel Ridge."

In July 2017, Steven's body was found "lying in the Texas heat for roughly five days." Steven had died of a drug overdose. According to Appellee, "only after Steven's death did [Appellants] send letters to [Appellee] and Steven . . . about trying to find the services Steven so desperately needed." In the letter, Appellants assigned an "intensive case manager" to Steven and represented to Steven, "my job is to help you get the services you need." Appellee claims Appellants "waited nearly [five] months to finally address the problem, . . . which was a little too late as [Steven] had already passed away."

Appellee sued Appellants for breach of contract, breach of the duty of good faith and fair dealing, violations of section 541 of the Texas Insurance Code, violations of the Deceptive Trade Practices Act, negligence, and wrongful death. Appellants filed their original answer on July 3, 2019. On November 11, 2019, Appellants filed a partial motion to dismiss Appellee's claims for breach of contract, breach of the duty of good faith and fair dealing, negligence, and wrongful death for failure to timely file an expert report pursuant to chapter 88 of the Texas Civil Practice and Remedies Code. After a hearing on the motion, the trial court denied Appellants' motion to dismiss without prejudice. This interlocutory appeal followed.

On appeal, Appellants argue that Appellee's claims for breach of contract, breach of the duty of good faith and fair dealing, negligence, and wrongful death are claims within the purview of chapter 88 because they challenge Appellants' "health care treatment decisions" as that term is defined under the statute and, as such, Appellee was required to serve an expert report in support of her claims within 120 days of Appellants' original answer. Because Appellee did not serve an

expert report, Appellants argue the trial court erred in denying their motion to dismiss Appellee's claims for breach of contract, breach of the duty of good faith and fair dealing, negligence, and wrongful death.

### STANDARD OF REVIEW

Determining whether Appellee's claims fall within the purview of chapter 88 requires the court to construe the statute. *Cf. Loaisiga v. Cerda*, 379 S.W.3d 248, 254 (Tex. 2012) (construing chapter 74 to determine whether the plaintiff's claim was a "health care liability claim" as defined by the statute). Issues of statutory construction are reviewed de novo. *Id.* at 254–55. In construing a statute, our primary objective is to determine and give effect to the Legislature's intent. *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003) (citing *State v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002)). To do this, "[w]e look first to the 'plain and common meaning of the statute's words.'" *Id.* (quoting *Gonzalez*, 82 S.W.3d at 327). "If a statute's meaning is unambiguous, we generally interpret the statute according to its plain meaning." *Id.* (citing *Gonzalez*, 82 S.W.3d at 327). "[L]egislative intent should be determined from the entire act, and not simply from isolated portions." *Jones v. Fowler*, 969 S.W.2d 429, 432 (Tex. 1998) (per curiam) (citing *Acker v. Tex. Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990)). Thus, "we must read the statute as a whole and interpret it to give effect to every part." *Id.* (citing *Ex parte Pruitt*, 551 S.W.2d 706, 709 (Tex. 1977)).

To determine whether Appellee's claims fall within the purview of chapter 88, we "focus[] on the facts underlying the claim, not the form of, or artfully-phrased language in, the plaintiff's pleadings describing the facts or legal theories asserted." *Cf. Loaisiga*, 379 S.W.3d at 255. We may consider the entire court record and the overall context of Appellee's suit, including the nature of the factual allegations in the pleadings, the motion to dismiss and the response to the motion, and any relevant evidence properly admitted. *Cf. id.* at 258.

**DISCUSSION**

Section 88.002(a) provides:

A health insurance carrier, health maintenance organization, or other managed care entity for a health care plan has the duty to exercise ordinary care when making health care treatment decisions and is liable for damages for harm to an insured or enrollee proximately caused by its failure to exercise such ordinary care.

TEX. CIV. PRAC. & REM. CODE ANN. § 88.002(a). The statute defines a "health care treatment decision" as "a determination made when medical services are actually provided by the health care plan and a decision which affects the quality of the diagnosis, care, or treatment provided to the plan's insureds or enrollees." *Id.* § 88.001(5). Our understanding of what constitutes an actionable "health care treatment decision" as stated in section 88.002(a) is informed by the other sections of the statute. *See Jones*, 969 S.W.2d at 432 ("[L]egislative intent should be determined from the entire act, and not simply from isolated portions." (citing *Acker*, 790 S.W.2d at 301)).

Subject to certain exceptions, Section 88.003(a) provides that a person may not maintain a cause of action under section 88.002(a) unless the affected insured has first "exhausted the appeals and review applicable under the utilization review requirements" as set forth in the Texas Insurance Code. The Texas Insurance Code defines "utilization review" as "a system for prospective, concurrent, or retrospective review of the medical necessity and appropriateness of health care services . . . ." TEX. INS. CODE ANN. § 4201.002(13). A "utilization review agent" conducts utilization review for an insurance company. *See id.* § 4201.002(14). An insured who receives an "adverse determination" in utilization review may appeal that decision and have it reviewed. *See id.* § 4201.303; *see also* §§ 4201.351–4201.403 (setting forth the procedures for appealing an adverse determination). An "adverse determination" in utilization review "means a determination by a utilization review agent that health care services provided or proposed to be provided to a patient are not medically necessary . . . ." *Id.* § 4201.002(1). Thus, subject to the other provisions

of section 88.002(a) and assuming a person has exhausted the appeals and review applicable under the utilization review requirements as required by section 88.003(a), a person may then maintain a cause of action under section 88.002(a) against a health insurance carrier, health maintenance organization, or other managed care entity for those decisions where a utilization review agent has determined in utilization review that health care services provided or proposed to be provided to the affected person were not medically necessary and, thus, were denied.

This reasoning is in line with section 88.002(c), which states that it is a defense:

> to any action asserted against a health insurance carrier, health maintenance organization, or other managed care entity for a health care plan that: (1) neither the health insurance carrier, health maintenance organization, or other managed care entity . . . controlled, influenced, or participated in the health care treatment decision; and (2) the health insurance carrier, health maintenance organization, or other managed care entity *did not deny or delay payment for any treatment prescribed or recommended by a provider to the insured or enrollee.*

TEX. CIV. PRAC. & REM. CODE ANN. § 88.002(c) (emphasis added). It follows then that if a "health care treatment decision" is not denied, there is no claim, *see id.*; and if a "health care treatment decision" is denied, there may be a claim after utilization review. *See* TEX. INS. CODE ANN. § 4201.002(13).

Section 88.002(d) provides that the standards imposed in section 88.002(a) "create no obligation on the part of the health insurance carrier, health maintenance organization, or other managed care entity to provide to an insured or enrollee treatment which is not covered by the health care plan of the entity." Thus, according to section 88.002(d)'s plain terms, a health insurance carrier or other stated entity could not be subject to liability under section 88.002(a) for a decision it made when it "correctly concluded that, under the terms of the relevant plan, a particular treatment was not covered" by the health care plan. *Aetna Health Inc. v. Davila*, 542

U.S. 200, 213 (2004).[1] For instance, "if the terms of the health care plan specifically exclude from coverage the cost of an appendectomy, then any injuries caused by the refusal to cover the appendectomy are properly attributed to the terms of the plan itself, not the managed care entity that applied those terms." *Id.* at 213 n.3.

With these considerations in mind, we disagree that Appellee is challenging "health care treatment decisions" as that term is described in the statute.

In examining the facts underlying Appellee's breach of contract claim, the complaint derives from the contract itself and the alleged representations that Appellants made to Appellee and Steven. Appellee alleges Appellants breached the contract when they represented that the policy's express terms covered only thirty days of in-patient treatment. The insurance contract is not in the record. However, according to Appellee, the stated policy terms provide no such time limitation. Appellee also alleges Appellants breached the contract when they failed to have an adequate number of providers in the area to provide in-patient treatment. According to Appellee, Appellants advertised on their website nine "in-network" providers that offered in-patient treatment to its insureds in the San Antonio, Texas area. However, according to Appellee, this representation was false because none of the listed providers offered in-patient treatment. Whether this representation was in the contract or was incorporated into the contract's express terms is an issue not before us. Lastly, according to Appellee, the contract provided for in-patient treatment and promised, "If you need help, you will be able to get it." Appellee's factual allegations detail

---

[1] In *Aetna Health Inc. v. Davila*, two individuals sued their respective health maintenance organizations under section 88.002(a) for refusing to cover certain medical services recommended by their health care provider. *Davila*, 542 U.S. at 204–05. The health care plans at issue were ERISA-regulated employee benefit plans. *Id.* at 204. At issue in *Davila* was whether the individuals' causes of action under section 88.002(a) were completely preempted by ERISA. *Id.* The Court concluded they were completely preempted by ERISA and, thus, removable from state to federal court. *Id.* Thereafter, the Legislature amended chapter 88 to include section 88.0015, which states, "This chapter does not apply to an employee benefit plan regulated under the Employee Retirement Income Security Act of 1974 . . . ." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 88.0015.

the alleged difficulties and delays she encountered trying to get Appellants to help Steven find treatment. It was not until after Steven's death five months later that Appellants assigned an intensive case manager to Steven in an attempt get him help. Therefore, Appellee alleges Appellants breached the contract when they failed to timely provide the help and in-patient treatment as promised under the contract.

Appellants attempt to categorize Appellee's complaint as a challenge to Appellants' healthcare treatment decisions by focusing on the part of the complaint where Appellee complains that Steven was not provided in-patient treatment because of Appellants' deficient assistance. Appellants argue Steven was not provided in-patient treatment because their utilization review process determined that in-patient treatment was not medically necessary for Steven under the policy. There is nothing in the record supporting this assertion. It could be equally likely that in-patient treatment was not provided because it was determined that in-patient treatment was specifically excluded under the policy's terms, in which case the decision would not come within the purview of liability under chapter 88. On this record, it is impossible for us to ascertain which is the case. Nevertheless, in considering the totality of Appellee's petition, the gravamen of Appellee's complaint concerns Appellants' inadequate assistance in helping Steven find treatment at all, rather than any particular decision Appellants made regarding Steven's treatment. The same is true for Appellee's breach of the duty of good faith and fair dealing, negligence, and wrongful death claims.

The underlying facts supporting Appellee's breach of the duty of good faith and fair dealing, negligence, and wrongful death claims mirror Appellee's breach of contract claim. Because of the unreasonable delays in finding Steven treatment and the misrepresentations made by Appellants, Appellee alleges in her negligence cause of action that Appellants "negligently provided and managed its behavioral health and substance abuse services" to Steven under the

policy.[2]  With regard to Appellee's breach of the duty of good faith and fair dealing and wrongful death claims, Appellee alleges she and her son requested assistance in finding in-patient treatment from Appellants, which Appellants failed to provide and, instead, "caused significant delay in finding treatment, misrepresented the terms of the policy, shortened stays at detox treatment," and waited five months after Appellee requested assistance to assign an intensive case manager to help Steven, all of which deprived Steven of the benefits and treatment afforded under the policy and ultimately caused his death.

Appellants attempt to label Appellee's complaints as challenges to Appellants' healthcare treatment decisions by only focusing on the part of the complaint where Appellee complains that Appellants "shortened stays."  Appellants argue the shortened stays were the product of a decision made after utilization review as to what length of stay was medically necessary for Steven.  As discussed, we cannot determine from the record Appellants' reasons for the "shortened stays" and, thus, we cannot discern whether Appellants' decision falls within or outside the purview of chapter 88.  As such, Appellants have not demonstrated that Appellee's breach of contract, breach of the duty of good faith and fair dealing, negligence, and wrongful death claims fall within the purview of chapter 88.  *See Miles v. Lee Anderson Co.*, 339 S.W.3d 738, 743 (Tex. App.—Houston [1st Dist.] 2011, no pet.) ("The party appealing the trial court's judgment bears the burden to show that the judgment is erroneous." (citing *Murray v. Devco, Ltd.*, 731 S.W.2d 555, 556 (Tex. 1987))).

---

[2] After Appellants filed their motion to dismiss, Appellee amended her petition and removed the negligence cause of action from her petition. *See FKM P'ship, Ltd. v. Bd. of Regents of Univ. of Hous. Sys.*, 255 S.W.3d 619, 632 (Tex. 2008) ("In civil causes generally, filing an amended petition that does not include a cause of action effectively nonsuits or voluntarily dismisses the omitted claims as of the time the pleading is filed."). However, a nonsuit or voluntary dismissal of a claim "does not control the fate of a non-moving party's independent claims for affirmative relief." *Villafani v. Trejo*, 251 S.W.3d 466, 469 (Tex. 2008). Appellants' motion to dismiss constitutes a claim for affirmative relief because it seeks dismissal of Appellee's claims with prejudice and attorney's fees. *See Walker v. Hartman*, 516 S.W.3d 71, 80 (Tex. App.—Beaumont 2017, pet. denied) (concluding appellant's motion to dismiss under the Texas Citizens' Participation Act survived the appellee's nonsuit of certain causes of action because the motion to dismiss sought affirmative relief, such as dismissal with prejudice, attorney's fees, and sanctions). Thus, although Appellee removed her negligence action from her petition, we consider Appellants' motion to dismiss that claim. *See id.*

Nonetheless, in examining the nature of Appellee's factual allegations as stated in the pleadings and the overall context of Appellee's suit, we disagree that the "shortened stay" allegations are the gravamen of Appellee's complaint. It is merely one instance used to show Appellants' alleged deficiencies in the process of finding Steven treatment. Appellants' alleged deficient assistance is the gravamen of Appellee's complaints, not their "health care treatment decisions" as that term is described in the statute.

In sum, the factual allegations underlying Appellee's complaints do not allege that Appellants failed to exercise ordinary care when making "health care treatment decisions," as that term is defined in the statute. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 88.001(5); 88.002(a). Because Appellants have not established that Appellee's breach of contract, breach of the duty of good faith and fair dealing, negligence, and wrongful death claims fall within the purview of chapter 88, we conclude the trial court did not err in denying their motion to dismiss those claims for failure to file an expert report pursuant to chapter 88. *See Miles*, 339 S.W.3d at 743.

### CONCLUSION

We affirm the trial court's order denying Appellants' motion to dismiss Appellee's claims for breach of contract, breach of the duty of good faith and fair dealing, negligence, and wrongful death.

Rebeca C. Martinez, Justice